Filed 11/27/17

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| F.P., | ) | |
| | ) | |
| Plaintiff and Respondent, | ) | |
| | ) | S216566 |
| v. | ) | |
| | ) | Ct.App. 3 C062329 |
| JOSEPH MONIER, | ) | |
| | ) | |
| | ) | Sacramento County |
| Defendant and Appellant. | ) | Super. Ct. No. 06AS00671 |
| _____ | ) | |

Section 632 of the Code of Civil Procedure[1] provides that "upon the trial of a question of fact by the court," the court "shall issue a statement of decision explaining the factual and legal basis for its decision as to each of the principal controverted issues at trial upon the request of any party appearing at the trial." We granted review in this case to decide whether a court's error in failing to issue a statement of decision as this section requires is reversible per se. The Court of Appeal held that such errors are not reversible per se, but are subject to harmless error review. The court based its conclusion on article VI, section 13 of the California Constitution (article VI, section 13), which provides: "No judgment shall be set aside, or new trial granted, in any cause, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless,

---

[1] All further unlabeled statutory references are to the Code of Civil Procedure.

after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." For reasons explained below, we agree with the Court of Appeal and affirm its judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In February 2006, plaintiff F.P. sued defendant Joseph Monier for acts of sexual battery that defendant allegedly committed in 1990 and 1991, when plaintiff was 10 years old and defendant was 17 years old. Plaintiff also sued defendant's parents for negligence, alleging that they had failed reasonably to care for, supervise, direct, oversee, and protect her from defendant. Defendant filed an answer denying the allegations and asserting in part that others were at fault and that any liability should be apportioned among them.

Before trial, plaintiff settled her claim against defendant's parents. The rest of the action went to trial before the court. The evidence presented during that trial showed, among other things, that plaintiff's father also sexually abused plaintiff during the time period in question. Dr. Laurie Wiggen, a licensed clinical psychologist who treated plaintiff from September 2005 until December 2007, diagnosed plaintiff as having posttraumatic stress disorder and attributed it to the traumas resulting from the molestations by her father and defendant. Dr. Wiggen could not separate the harm done by defendant from that done by plaintiff's father, testifying that their conduct was "cumulatively impactful." Dr. Eugene Roeder, a licensed psychologist who evaluated plaintiff in July 2005, diagnosed plaintiff as suffering from major depression, an anxiety disorder, and posttraumatic stress disorder. Like Dr. Wiggen, Dr. Roeder could not distinguish the symptoms defendant had caused from those plaintiff's father had caused, but he testified that the molestation by plaintiff's father "was dramatically more traumatic than" the molestation by defendant because plaintiff's relationship with her father "was a

2

much more central, basic relationship in her life" and "[h]er relationship with the [defendant] was more tangential."

The court issued a tentative decision on April 29, 2009, finding that defendant had committed the alleged acts and that his conduct was a substantial factor in causing plaintiff's injuries. The court indicated its intent to award damages in the amount of $305,096, consisting of $44,800 for lost income, $10,296 for past and future medical expenses, and $250,000 for general noneconomic damages. The court instructed plaintiff's counsel to prepare a judgment. Later that day, defendant timely filed a request for a statement of decision requesting, as relevant here, that the court set forth "the basis upon which" it was awarding special damages, emotional distress damages, past and future medical expenses, and lost wages.

On May 1, 2009, plaintiff's counsel submitted a proposed judgment to the court. In an accompanying declaration, counsel explained: (1) he faxed a copy of the proposed judgment to defendant's counsel after trial on April 29, 2009, and was informed that defendant's counsel was no longer at that number; (2) the next day, April 30, he faxed a copy of the proposed judgment to the new fax number of defendant's counsel and left counsel a voicemail explaining that the trial judge, who had been visiting, "needed" the proposed judgment reviewed and signed "immediately" because the judge "was leaving Sacramento on May 1, 2009"; and (3) he did not hear from defendant's counsel and submitted the proposed judgment to the court the next day, May 1, 2009.

On May 1, 2009, the court signed the judgment without issuing a separate statement of decision. The judgment stated in relevant part: "After considering all of the evidence and testimony presented at trial it is hereby adjudged, determined and decreed that [defendant] molested his biological cousin, plaintiff [F.P.] numerous times when she was ten years old, including acts of unlawful penetration, sodomy, oral copulation of him and other lewd and lascivious acts. The conduct of Defendant . . . is further found to be outrageous and a substantial

3

factor in causing injuries to the Plaintiff. Defendant took advantage of the vulnerability of the Plaintiff due to her age. Plaintiff . . . was injured as a proximate result of [defendant's] sexual assaults of her causing her to incur past and future medical/psychological treatment expenses of $10,296.00. Plaintiff lost income as a proximate result of [defendant's] sexual assaults of her in the amount of $48,800.00." The judgment ordered defendant to pay total damages of $305,096.00, which included general damages of $250,000 and special damages of $55,096.00.

Defendant appealed, arguing that the trial court had erred in failing to issue a statement of decision and that the error was reversible per se. According to defendant, without a statement of decision, it was unknown whether the trial court had apportioned general damages as the law required. The Court of Appeal found error, but disagreed that it was reversible per se. Article VI, section 13, the court held, precludes reversal absent a showing that the trial court's failure to issue a statement of decision regarding the issues defendant had specified "resulted in a miscarriage of justice." The error here, the court found, did not result in a miscarriage of justice because defendant had forfeited any right to apportionment of damages by failing to raise the issue at trial. Thus, the court concluded, the absence of a statement of decision on the issue of general noneconomic damages was of no consequence.

We granted review, limiting the issue to whether "a trial court's error in failing to issue a statement of decision upon a timely request" is "reversible per se."[2]

## DISCUSSION

The duty of a trial court in question here — to issue, upon the request of a party appearing at a court trial of a question of fact, "a statement of decision

---

[2]    Given this limitation, we express no opinion regarding the Court of Appeal's conclusion that the error here was, in fact, harmless.

4

explaining the factual and legal basis for its decision as to each of the principal controverted issues at trial" (§ 632) — reflects many years of statutory evolution. In 1851, the Legislature enacted section 180 of the Practice Act, which provided that "[u]pon the trial of an issue of fact by the Court, its decision shall be given in writing, and filed with the clerk, within ten days after the trial took place. In giving the decision, the facts found, and conclusions at law, shall be separately stated. Judgment upon the decision shall be executed accordingly." (Stats. 1851, ch. 5, § 180, pp. 78-79.) Ten years later, the Legislature added a provision stating that "[i]n cases tried by the court without a jury, no judgment shall be reversed for want of a finding, or for a defective finding, of the facts, unless exceptions be made in the court below to the finding, or to the want of a finding." (Stats. 1861, ch. 522, § 2, p. 589.) Five years after that, in 1866, the legislature combined these provisions into a single section that provided: "Upon a trial of issue of fact by the Court, judgment shall be entered in accordance with the finding of the Court, and the finding, if required by either party, shall be reduced to writing and filed with the Clerk. In the finding filed, the facts found and the conclusions of law shall be separately stated. In such cases no judgment shall be reversed on appeal for want of a finding in writing at the instance of any party who, at the time of the submission of the cause, shall not have requested a finding in writing, and had such request entered in the minutes of the Court . . . ." (Stats. 1865-1866, ch. 619, § 2, p. 844.)

In 1872, when the Legislature enacted the Code of Civil Procedure, it replaced these provisions with section 632 and former section 633. Section 632 provided: "Upon the trial of a question of fact by the Court, its decision must be given in writing and filed with the Clerk within twenty days after the cause is submitted for decision, and unless the decision is filed within that time the action must again be tried." Former section 633 provided: "In giving the decision, the facts found and conclusions of law must be separately stated. Judgment upon the decision must be entered accordingly." (Repealed by Stats. 1933, ch. 744, § 198,

5

p. 1904.) Two years later, the Legislature amended section 632 by (1) extending the time for filing the decision from 20 to 30 days, and (2) deleting the clause stating that "the action must again be tried" if the decision was not filed within the specified time. (Code Amendments 1873-1874, § 79, p. 312.)

In 1933, the Legislature combined these separate provisions into a single section 632, which provided in relevant part: "In superior courts and municipal courts, upon the trial of a question of fact by the court, its decision must be given in writing and filed with the clerk within thirty days after the cause is submitted for decision. In giving the decision, the facts found and the conclusions of law must be separately stated. . . . [¶] Judgment upon the decision must be entered accordingly." (Stats. 1933, ch. 744, § 105, p. 1876.) In 1959, the Legislature added a sentence to the section stating that "[t]he statement of facts found shall fairly disclose the court's determination of all issues of fact in the case." (Stats. 1959, ch. 637, § 1, p. 2613.)

The Legislature next substantively revised the section in 1968. As here relevant, the amended section provided: "In superior courts, upon [the] trial [of a question of fact by the court,] the court shall announce its intended decision. Within the time after such announcement permitted by rules of the Judicial Council, any party appearing at the trial may request findings. Unless findings are requested, the court shall not be required to make written findings and conclusions. . . . [¶] . . . [¶] Where findings are required, they shall fairly disclose the court's determination of all issues of fact in the case." (Stats. 1968, ch. 716, § 1, pp. 1417-1418.)

The current version of section 632 began to take shape in 1981, when the Legislature amended the statute to provide: "In superior . . . courts, . . . upon the trial of a question of fact by the court, written findings of fact and conclusions of law shall not be required. Upon the request of any party appearing at the trial, made within 10 days after the court announces a tentative decision, . . . the court shall issue a statement of decision explaining the factual and legal basis for its

6

decision as to each of the principal controverted issues at trial. The request for a statement of decision shall specify those controverted issues as to which the party is requesting a statement of decision. . . . [¶] The statement of decision shall be in writing, unless the parties appearing at trial agree otherwise." (Stats. 1981, ch. 900, § 1, p. 3425.)

In 1998, the Legislature slightly reordered this language so that the statute provided in relevant part, as it does today, as follows: "In superior . . . courts, upon the trial of a question of fact by the court, written findings of fact and conclusions of law shall not be required. The court shall issue a statement of decision explaining the factual and legal basis for its decision as to each of the principal controverted issues at trial upon the request of any party appearing at the trial. The request must be made within 10 days after the court announces a tentative decision . . . . The request for a statement of decision shall specify those controverted issues as to which the party is requesting a statement of decision. . . . [¶] The statement of decision shall be in writing, unless the parties appearing at trial agree otherwise." (Stats. 1998, ch. 931, § 84, p. 6442.)

As this discussion demonstrates, except between 1872 and 1874, when section 632 stated that "the action must again be tried" upon a trial court's failure to file its decision within the specified time, the statutes have not specified the consequences of noncompliance. They have, however, at times expressly *precluded* reversal for a failure to make findings if the appealing party did not object to the failure in the trial court or file a written request for findings and have it entered in the court's minutes.

Moreover, at least since 1851, our generally applicable statutes have *precluded* reversal for errors in civil cases *absent prejudice*. Section 71 of the 1851 Practice Act provided that "[t]he Court shall, in every stage of an action, disregard any error or defect in the pleadings, or proceedings, which shall not affect the substantial rights of the parties; and no judgment shall be reversed or affected by reason of such error or defect." (Stats. 1851, ch. 5, § 71, p. 61.) In

7

1872, the Practice Act provision became section 475, which initially provided: "The Court must, in every stage of an action, disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the parties, and no judgment shall be reversed or affected by reason of such error or defect." Since 1897, when the Legislature last amended it, section 475 has provided: "The court must, in every stage of an action, disregard any error, improper ruling, instruction, or defect, in the pleadings or proceedings which, in the opinion of said court, does not affect the substantial rights of the parties. No judgment, decision, or decree shall be reversed or affected by reason of any error, ruling, instruction, or defect, unless it shall appear from the record that such error, ruling, instruction, or defect was prejudicial, and also that by reason of such error, ruling, instruction, or defect, the said party complaining or appealing sustained and suffered substantial injury, and that a different result would have been probable if such error, ruling, instruction, or defect had not occurred or existed. There shall be no presumption that error is prejudicial, or that injury was done if error is shown." (Stats. 1897, ch. 47, § 1, p. 44.)

More importantly, for over 100 years, the California Constitution has also expressly precluded reversal absent prejudice. In 1911, California voters added former article VI, section 4 ½ to the state Constitution, which provided: "No judgment shall be set aside, or new trial granted in any criminal case on the ground of misdirection of the jury or the improper admission or rejection of evidence, *or for error as to any matter of pleading or procedure*, unless, after an examination of the entire cause including the evidence, the court shall be of the opinion that the error complained of has resulted in *a miscarriage of justice*." (Italics added.) Three years later, the voters expanded the provision's reach to civil cases by changing the phrase "in any criminal case" to "in any case." (See *Vallejo etc. R.R. Co. v. Reed Orchard Co.* (1915) 169 Cal. 545, 553-554.) Since 1966, when the constitution was reorganized, the provision has appeared as article VI, section 13, which states: "No judgment shall be set aside, or new trial granted, in any

8

cause, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, *or for any error as to any matter of procedure*, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has *resulted in a miscarriage of justice*." (Italics added.)

As we have explained, article VI, section 13 generally "prohibits a reviewing court from setting aside a judgment due to trial court error unless it finds the error prejudicial." (*People v. Chun* (2009) 45 Cal.4th 1172, 1201.) The section applies to both constitutional and nonconstitutional errors. (*People v. Cahill* (1993) 5 Cal.4th 478, 501 (*Cahill*).) It "empower[s]" appellate courts "to examine 'the entire cause, including the evidence,' " and "require[s]" them "to affirm the judgment, notwithstanding error, if error has not resulted 'in a miscarriage of justice.' " (*People v. O'Bryan* (1913) 165 Cal. 55, 64.) To be sure, even under section 13, an error is reversible per se when it constitutes "a ' "structural [defect] in the . . . trial mechanism" ' that defies evaluation for harmlessness." (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 579 (*Soule*); see *People v. Anzalone* (2013) 56 Cal.4th 545, 554 ["A structural error requires per se reversal because it cannot be fairly determined how a trial would have been resolved if the grave error had not occurred."]; *Sandquist v. Lebo Automotive, Inc.* (2016) 1 Cal.5th 233, 261 [finding error "reversible per se" because its "effects are ' "unmeasurable" ' and ' "def[y] analysis by 'harmless-error' standards" ' "].) But "[c]ategorization of an error as structural represents 'the exception and not the rule.' " (*People v. Sivongxxay* (2017) 3 Cal.5th 151, 178.) "[A] strong presumption" exists *against* finding that an error falls within the structural category, and "it will be the rare case" where an error — even "a constitutional violation" — "will not be subject to harmless error analysis." (*Anzalone*, *supra*, at p. 554.)

Based on these provisions, we agree with the Court of Appeal that a trial court's error in failing to issue a requested statement of decision is not reversible

per se, but is subject to harmless error review. Nothing in the language of section 632 as it now stands establishes a rule of automatic reversal, and nothing in the statute's legislative history suggests the Legislature intended the current statute to have that effect. On the contrary, the statute's evolution — specifically, the deletion, after only two years, of language *requiring* that an action "again be tried" for noncompliance — cuts against reading the statute in that manner. Thus, there is no statutory directive to override section 475, which, as explained above, precludes reversal absent prejudice. Nor is there any basis for construing section 632 to conflict with the constitutional mandate of article VI, section 13, which precludes reversal "for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." Although in a particular case a trial court's failure to issue a requested statement of decision may amount to a structural defect in the trial mechanism that defies evaluation for harmlessness, we cannot say this type of error "fall[s] into the rare class of mistakes that are reversible per se." (*People v. Sivongxxay*, *supra*, 3 Cal.5th 151, 180.)

Defendant argues that, notwithstanding the relevant constitutional and statutory provisions, a rule of automatic reversal is dictated by our precedents. "This court," he asserts, "has stated almost since statehood that a judgment must be reversed for failure to provide required findings, and has restated the rule time and again since" the adoption of section 475 in 1872, the extension of article VI, section 4 ½ to civil cases in 1914, and the adoption of article VI, section 13 in 1966.

Defendant is correct that many of our decisions suggest a rule of automatic reversal. For example, in possibly our first decision on the subject, after quoting section 180 of the Practice Act, we reversed a judgment and remanded for a new trial, stating: "We are of opinion that this law is not merely directory, and we have no right to destroy or impair its efficacy. It is intended by it, that the decision of

10

the Court shall be the basis of the judgment in the same manner as the verdict of a jury; and it follows, that without such decision the judgment cannot stand." (*Russel v. Armador* (1852) 2 Cal. 305 (*Russel*).) Eighty-five years later, in 1937, we stated that if "findings are necessary" under section 632 "and have not been waived," it "is undoubtedly the law" that a court's "failure to make them constitutes prejudicial and reversible error." (*Carpenter v. Pacific Mut. Life Ins. Co.* (1937) 10 Cal.2d 307, 326.)

However, our decisions are not as uniform as defendant argues. In *McQuillan v. Donahue* (1874) 49 Cal. 157, the trial court, in a bench trial, decided the case "orally in favor of the plaintiff," and "[n]o decision in writing was ever given or filed." The defendant moved for a new trial pursuant to section 632, which stated at the time that "the action must again be tried" if the court failed to file its decision within the specified time. The motion was denied, and the defendant appealed, citing *Russel*. We affirmed, stating: "We are of opinion that this provision of the statute is directory merely." (*McQuillan*, at p. 158.) In *Gregory v. Gregory* (1894) 102 Cal. 50, 51, the unsuccessful plaintiffs in a quiet title action tried by the court sought reversal on the ground that "findings of fact were not waived, and none were filed by the court below." We rejected the claim, citing the principle that "a judgment will not be reversed for want of a finding upon a particular issue, where it is apparent that the omission in no way prejudiced the appellant." (*Id*. at p. 52.) In *Gates v. McLean* (1886) 70 Cal. 42, 46, we explained: "It has been repeatedly held, that even when the [trial] court has omitted to find upon a material issue, a new trial may be denied if on the evidence the finding must have been adverse to the party asking the new trial. By parity of reason, a new trial may be denied if a finding in favor of the party asking the new trial (upon a particular issue) could not have changed the result." (See *Murphy v. Bennett* (1886) 68 Cal. 528, 530 ["There should be findings upon all the material issues in the case, but a judgment will not be reversed for want of a finding on a particular issue, where it is apparent that the failure to find on that issue is in no

11

way prejudicial to the appellant."]; *Hutchings v. Castle* (1874) 48 Cal. 152, 156 [although trial court "should have found upon the issue," because there was "no legal evidence sufficient to justify a finding" for defendant, "the omission to find . . . could not have prejudiced the defendant" and "is [not] a reason for reversing the judgment"].)

In several decisions that predated the 1914 addition to our Constitution of a "miscarriage of justice" provision for civil cases (former article VI, section 4 ½), we required, based on section 475, a showing of prejudice to justify reversal. In *McCourtney v. Fortune* (1881) 57 Cal. 617, 619 (*McCourtney*), we held that a judgment may not be reversed for a trial court's failure to make a finding on a particular issue where the omission "is not prejudicial to the appellant." Citing section 475, we explained that "[n]o judgment can be reversed for any error or irregularity in the proceedings of a case which does not affect the substantial rights of the parties." (*McCourtney*, at p. 619.) Applying this rule, we held that, because the finding the trial court had failed to make was, in light of other findings, "of no moment," the omission was, "if anything, a mere irregularity, from which no possible injury could result to the appellants, and it is no ground for the reversal of the judgment." (*Id.* at pp. 619, 620.) A few years later, citing *McCourtney*, we explained that "[w]hen the [trial] court fails to find *on a material issue*, the judgment will not be reversed, if the finding omitted must have been adverse to the appellant." (*People v. Center* (1885) 66 Cal. 551, 564, italics added.)

Ten years after *McCourtney*, in *Winslow v. Gohransen* (1891) 88 Cal. 450, 451-452 (*Winslow*), we explained that a trial court's failure to make a finding on all issues is not reversible error if there was no evidence to support a finding on the omitted issues in favor of the complaining party, or if the evidence on those issues was insufficient to support such a finding. Again citing section 475, we reasoned: "In either case the finding of the court could only be against the allegation, and consequently would not 'invalidate' the judgment rendered in accordance with the other findings; and inasmuch as the failure to make such

12

finding would not affect the substantial rights of the appellant, the judgment ought not to be reversed." (*Winslow*, *supra*, at p. 452.) In other words, we explained, "[i]f the omitted findings must have been adverse to the appellant, their omission is not error sufficient to authorize the reversal of the judgment." (*Id.* at pp. 452-453.) Notably, none of the decisions on which defendant relies cited or discussed section 475 or its "substantially identical" source, section 71 of the 1851 Practice Act. (*Cahill*, *supra*, 5 Cal.4th at p. 525, fn. 6.)

We began grounding the prejudice inquiry in the state Constitution soon after the 1914 amendment to former article VI, section 4 ½ that made its "miscarriage of justice" standard applicable in civil cases. In *Maloof v. Maloof* (1917) 175 Cal. 571, 573, the defendant sought reversal in a case tried by the court based on the court's "failure to find upon material issues." We rejected the claim, explaining: "[I]t is perfectly apparent, on the whole record, that the trial judge did not think that the defendant had established a cause of action in her favor, and that if, when he signed the findings, his attention had been directed to the specific issue under discussion, he would inevitably have made a finding on it against the defendant. We are satisfied that the omission to find did not result in a 'miscarriage of justice,' and the error must therefore be disregarded under the provision of [former] section 4 ½ of article VI of the Constitution." (*Id.* at p. 574.) Again, none of the decisions on which defendant relies cites or discusses the constitutional "miscarriage of justice" provision for civil cases that has existed since 1914.

The significance of this analytical omission is clear from our decision in *Cahill*, *supra*, 5 Cal.4th at page 509, which relied on the constitution's "miscarriage of justice" provision to overrule our decisions holding that the erroneous admission of a coerced confession is reversible per se under California law. Cases predating adoption of the constitutional provision, we explained, did not consider or decide whether the erroneous admission of a coerced confession constitutes a "miscarriage of justice" within the meaning of that provision such

that reversal is required "without regard to the other evidence received at trial." (*Cahill*, at p. 494, fn. 10.) Cases postdating that event, we continued, had "lost sight of" the new provision's "principal purpose and significance" insofar as they focused on the persuasive impact that coerced confessions, " 'as a class,' '[a]lmost invariably' " have. (*Id*. at p. 503.) Recognition of this impact "simply means that the improper admission of a confession is much more likely to affect the outcome of a trial than are other categories of evidence, and thus is much more likely to be prejudicial under the traditional harmless-error standard." (*Ibid*.) But this increased likelihood of prejudice "does not . . . justify the judicial adoption of a state-law rule that automatically and monolithically treats all improperly admitted confessions as requiring reversal of the defendant's conviction; the California constitutional reversible-error provision was adopted for the specific purpose of eliminating just such a prophylactic approach to reversible error." (*Ibid*.) As to considerations of stare decisis, we reasoned in part that (1) the precedents supporting the defendant did not even "attempt to explain how a rule requiring automatic reversal . . . was compatible with the purpose of the applicable state constitutional provision" (*id*. at p. 508), and (2) following them "would fail to give proper recognition to the important public policies underlying the [constitutional] reversible error provision" (*ibid*.), including maintaining "the public's confidence in the criminal justice system" (*id*. at p. 509).

In *Soule*, *supra*, 8 Cal.4th at page 574, we relied on article VI, section 13 and *Cahill* in the civil context in declining to follow the "[d]ecades old" principle, recited in "a substantial body of California decisions," that "the erroneous denial of correct specific instructions covering a civil litigant's supportable 'theory of the case' " is reversible per se. We first observed that the "line of authority [was] not unbroken," and that "[a] number of decisions" had "assessed the actual effect of" such errors "on the judgment." (*Soule*, at p. 575.) We next explained that the principles *Cahill* discussed, "properly adapted, apply with equal or even greater force to the issue before us." (*Id.* at p. 578.) "As in *Cahill*, the express terms of"

14

article VI, section 13 "weigh against automatic reversal," because the section "explicitly mentions 'misdirection of the jury' as error [that] warrants reversal" only if a miscarriage of justice would otherwise result. (*Soule*, at p. 579.) And decisions applying "the traditional rationale that certain forms of instructional omission in civil cases are 'inherently' prejudicial" had " 'lost sight of the principal purpose and significance of' " our constitutional "harmless error" provision. (*Ibid*.) "Erroneous civil instructional omissions, like the criminal evidentiary error at issue in *Cahill*, may be more or less likely to cause actual prejudice, depending on their nature and context. Particularly serious forms of error might 'almost invariably' prove prejudicial in fact. But it does not follow that courts may 'automatically and monolithically' treat a particular category of civil instructional error as reversible per se. Article VI, section 13 of the California Constitution requires examination of each individual case to determine whether prejudice actually occurred in light of the entire record. [Citation.] [¶] Finally, we may not blindly endorse traditional rules of automatic reversal . . . in order to preserve doctrinal stability. As in *Cahill*, our adherence to such principles would undermine the important and still-vital requirements and policies of article VI, section 13 of the California Constitution. No form of civil trial error justifies reversal and retrial, with its attendant expense and possible loss of witnesses, where in light of the entire record, there was no actual prejudice to the appealing party." (*Soule*, at p. 580.)

In *People v. Breverman* (1998) 19 Cal.4th 142, 172-179, we again relied on article VI, section 13 and *Cahill* to overrule, for purposes of noncapital cases, our prior decisions announcing a rule of near-automatic reversal for a trial court's error in failing to instruct, sua sponte, on all lesser included offenses the evidence supports. This error, we explained, "is not a fundamental structural defect in the mechanism of the criminal proceeding [citation] which cannot or should not be evaluated for prejudice by reference to 'the entire cause, including the evidence.' " (*Id*. at p. 176.) Instead, "it is a mere trial error, one committed in the presentation

15

of the case to the jury," and its "probable adverse effect . . . in a particular case can readily be assessed by an individualized, concrete examination of the record in that case." (*Ibid*.) Although our prior decision announcing the rule mentioned the constitutional harmless error provision, it simply "assert[ed], as an ipse dixit" (*id*. at p. 176), that this "form of error is itself a miscarriage of justice" (*ibid*.), and it "provided [no] significant analysis to support the conclusion that the California Constitution precludes, *rather than requires*, examination of the *entire record*, *including the evidence*, for actual harm" (*id*. at pp. 175-176). The constitutional "obligation" under article VI, section 13 to determine whether an error produced a miscarriage of justice "cannot be avoided" by such "ipse dixit." (*Id*. at p. 176.) This analytical shortcoming, combined with *Cahill*'s "reexamination of the meaning of" the constitutional harmless error provision, "compelled" overruling our precedents and "depart[ing] from the 'fundamental,' though 'flexible,' jurisprudential policy of stare decisis." (*Id*. at p. 178, fn. 26.)

In light of these decisions, the precedents on which defendant relies, which fail to mention, let alone discuss, the constitutional harmless error provision, do not offer a sound basis for a rule of automatic reversal. Because article VI, section 13 of the California Constitution explicitly identifies "any error as to any matter of procedure" (*ibid*.) as error that warrants reversal only if a miscarriage of justice would otherwise result, here, as in *Soule* and *Cahill,* its "express terms . . . weigh against automatic reversal" (*Soule*, *supra*, 8 Cal.4th at p. 579) for a court's procedural error in failing to issue a statement of decision. Even were our precedents uniform in applying a rule of automatic reversal, as *Soule* explains, "we may not blindly endorse" that rule "in order to preserve doctrinal stability," because doing so "would undermine the important and still-vital requirements and policies of article VI, section 13." (*Soule*, at p. 580.) Given the constitutional provision, an inquiry into prejudice is required.

In addition to relying on precedent, defendant argues that, because a trial court's error in failing to issue a statement of decision "impairs" the "fundamental

16

right[]" to a trial, "which necessarily includes the right to a decision on the matters in dispute," "[i]t is a 'structural defect' in the trial proceedings" that is reversible per se. According to defendant, in a nonjury trial, a court's "findings are, in substance, a special verdict," and "the statement of decision is the court's final decision." It follows, defendant argues, that a failure to issue a statement of decision constitutes "a failure to decide the case," and that "[e]ntering judgment without issuing a required statement of decision is tantamount to" entering judgment in a jury trial "without having the jury render a verdict." Defendant also argues that a court's error in failing to issue a statement of decision " 'defies evaluation for harmlessness' "; because a court is free to revise its statement of intended decision, when it enters judgment without issuing a statement of decision, "it is impossible to speculate what the result might have been had the judge complied with the mandate of [section] 632."

In light of our precedent and the terms of the relevant statutes, we reject defendant's arguments. Regarding our precedent, as noted above, in *Winslow*, *supra*, 88 Cal. 450, we explained that where a trial court fails to make a finding on an issue that could only be decided in a way that "would not 'invalidate' the judgment rendered in accordance with the other findings" (*id*. at p. 452), "the failure to make such finding would not affect the substantial rights of" (*ibid*.) the complaining party and "is not error sufficient to authorize the reversal of the judgment" (*id*. at p. 453). In a separate decision decided the same year as *Winslow*, we explained that the rule defendant here invokes — where a trial court fails to make findings upon all the material issues presented by the pleadings, "there has been a mistrial, and the [court's] decision, having been rendered before the case has been fully tried, is considered to have been a decision 'against law' " — applies only where a finding on the omitted issue "would have the effect to countervail or destroy the effect of the [court's] other findings." (*Brison v. Brison* (1891) 90 Cal. 323, 328.) Thus, "[i]f the findings which are made are of such a character as to dispose of issues which are sufficient to uphold the

17

judgment, it is not a mistrial or against law to fail or omit to make findings upon other issues which, if made, would not invalidate the judgment." (*Ibid*.)  The next year, in *Diefendorff v. Hopkins* (1892) 95 Cal. 343, in the course of restating the rule that a trial court's failure to make a finding on an issue that "could make no possible difference in the result" (*id*. at p. 347)  — i.e., had "become immaterial" (*id*. at pp. 347-348) — "is not error, or at least, . . . not a prejudicial error" (*id*. at p. 348), we rejected the argument that a failure to find upon *all* issues "is prejudicial error, because it deprives [the complaining party] of the advantages which it was the purpose of the statute (Code Civ. Proc. secs. 632, 633) to secure, viz., a final adjudication upon each separate issue, to serve as a basis for a final judgment by this court on the appeal." (*Ibid*.)  Consistent with these precedents, we have more generally explained that "the absence of findings [does] not make [a] judgment void, but at most [is] only . . . error reviewable on appeal." (*May v. Hatcher* (1900) 130 Cal. 627, 629.)

Also relevant are decisions involving the adequacy of factual findings and legal conclusions contained in the judgment itself.  As detailed earlier, before the 1960's, the relevant statutes required that a court's findings of facts and conclusions of law "be separately stated" in writing, and that "[j]udgment upon the decision . . . be entered accordingly." (See Stats. 1959, ch. 637, § 1, p. 2613; Stats. 1968, ch. 716, § 1, pp. 1417-1418.)  Notwithstanding this wording, we have consistently held that factual findings and legal conclusions *in the judgment* satisfied the statutory requirements.  (*Estate of Janes* (1941) 18 Cal.2d 512, 514; *Estate of Exterstein* (1934) 2 Cal.2d 13, 15-16; *Prothero v. Superior Court* (1925) 196 Cal. 439, 443; *Shaingold v. Shaingold* (1923) 191 Cal. 438, 439; *McKelvey v. Wagy* (1910) 157 Cal. 406, 408; *May v. Hatcher*, *supra*, 130 Cal. at p. 628; *Locke v. Klunker* (1898) 123 Cal. 231, 239; *Hopkins v. Warner* (1895) 109 Cal. 133, 139.)  Thus, even under the prior statutory language, it was not true, as defendant asserts, that a trial court's failure to issue a decision, separate from the judgment, setting forth its factual findings and conclusions of law necessarily meant that

18

there was a failure to decide the case. Nothing suggests the Legislature, in amending section 632 to require "a statement of decision explaining the factual and legal basis for [the court's] decision" instead of a decision stating factual findings and conclusions of law, intended to change our well-established rule.

Here, as previously explained, the judgment set forth the following: (1) defendant molested plaintiff numerous times when she was 10 years old, including acts of unlawful penetration, sodomy, oral copulation of him and other lewd and lascivious acts; (2) his conduct was outrageous and a substantial factor in causing plaintiff's injuries; (3) he took advantage of plaintiff's vulnerability due to her age; (4) plaintiff was injured as a proximate result of defendant's conduct, causing her to incur past and future medical/psychological treatment expenses of $10,296.00; and (5) plaintiff lost income as a proximate result of defendant's conduct in the amount of $48,800.00. Given these findings, defendant is incorrect that the trial court's failure to issue a separate statement of decision constituted a failure to decide the case.

Finally, defendant's argument, which depends largely on cases applying the language of earlier provisions, is inconsistent with aspects of the relevant statutes as they stand today. Under section 632 as it was enacted in 1872, courts trying issues of fact were *required* to issue written findings of facts and conclusions of law in *all* cases, even if not requested. Beginning in 1959, the written findings had to "disclose the court's determination of *all* issues of fact in the case." (Stats. 1959, ch. 637, § 1, p. 2613, italics added.) However, since section 632 was amended in 1981, courts must issue a statement of decision "explaining the factual and legal basis for its decision" only *if* a party makes a timely request, and must address in that statement only the "controverted issues" a party "specif[ies]" in the request. (*Harvard Investment Co. v. Gap Stores*, *Inc.* (1984) 156 Cal.App.3d 704, 709-710, fn.3.) In light of these provisions, and the cases discussed above, we reject defendant's assertion that a court's failure to issue a statement of decision

19

addressing the specified issues necessarily constitutes a complete "failure to decide the case."

Of course, the more issues specified in a request for a statement of decision and left unaddressed by a court's failure to issue a statement, the "more difficult, as a practical matter, [it may be] to establish harmlessness." (*People v. Mil* (2012) 53 Cal.4th 400, 412 [adopting prejudice test and rejecting per se reversal for instructions that omit multiple elements of a criminal offense].) A trial court's failure to issue a properly requested statement of decision may effectively shield the trial court's judgment from adequate appellate review. (*E.g.*, *Gordon v. Wolfe* (1986) 179 Cal.App.3d 162, 167-168 [without a statement of decision allocating general and special damages, "we are unable to review the sufficiency of the [lump sum] award properly by examining its various components in light of the evidentiary support for each of them"].) As plaintiff herself acknowledges, "a trial court's failure to issue a statement of decision may at times require reversal in order for the appellate court to effectively perform a review of the material issues." But the possibility of causing prejudice even "in many cases . . . does not . . . justify the judicial adoption of a state-law rule that automatically and monolithically treats *all* [failures to issue a requested statement of decision] as requiring reversal." (*Cahill*, *supra*, 5 Cal.4th at p. 503.) As we have explained, our "constitutional reversible-error provision was adopted for the specific purpose of eliminating just such a prophylactic approach to reversible error." (*Ibid.*)

It is true that, in this case, the correct procedure was not followed before the court signed and entered the judgment. Defendant did not have the requisite time to file objections to the proposed judgment before the court signed and entered the judgment.**3** However, citing our Constitution's "miscarriage of justice" provision,

---

**3** If a party timely requests a statement of decision, a proposed statement of decision and judgment must be prepared and served on all parties by either the court or a party the court designates. (Cal. Rules of Court, rule 3.1590(f).) "Any

*(footnote continued on next page)*

we have long held that similar procedural errors are subject to harmless error review. (*Miller v. Murphy* (1921) 186 Cal. 344, 350 [failure to serve proposed findings before court signed them was not prejudicial]; *Baker v. Eilers Music Co.* (1917) 175 Cal. 652, 656-657 [premature signing of findings and judgment was not prejudicial].)

## DISPOSITION

For reasons stated above, we affirm the Court of Appeal's judgment.

**CHIN, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**CORRIGAN, J.**
**LIU, J.**
**CUÉLLAR, J.**
**KRUGER, J.**
**HUMES, J.***

_____
*Presiding Justice of the Court of Appeal, First Appellate District, Division One, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*(footnote continued from previous page)*

party may, within 15 days after the proposed statement of decision and judgment have been served, serve and file objections to the proposed statement of decision or judgment." (*Id.*, rule 3.1590(g).) Here, the court signed the proposed judgment two days after plaintiff's counsel first attempted to fax it to defendant's counsel.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** F.P. v. Monier

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 222 Cal.App.4th 1087
**Rehearing Granted**


_____

**Opinion No.** S216566
**Date Filed:** November 27, 2017

_____

**Court:** Superior
**County:** Sacramento
**Judge:** Robert Ahern*


_____

**Counsel:**

Ortiz Law Office, Jesse S. Ortiz III; Jay-Allen Eisen Law, Jay-Allen Eisen and Aaron S. McKinney for Defendant and Appellant.

Kathryn Karcher, Jan T. Chilton, Jon B. Eisenberg, Dennis A. Fischer Lisa R. Jaskol, Robin B. Johansen, Robin Meadow; Ferguson Case Orr Paterson and Wendy C. Lascher for California Academy of Appellate Lawyers as Amicus Curiae on behalf of Defendant and Appellant.

Munger, Tolles & Olson, Dentons US, Jeffrey L. Bleich, Hannah E. Shearer, Thomas P. Clancy; Law Offices of John P. Henderson, John P. Henderson and David C. Henderson for Plaintiff and Respondent.

*Retired judge of the Santa Clara Superior Court, assigned by the Chef Justice pursuant to article VI, section 6 of the California Constitution.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Jay-Allen Eisen
Jay-Allen Eisen Law Corporation
2431 Capitol Avenue
Sacramento, CA  95816
(916) 444-6171

Jeffrey L. Bleich
Dentons US
1999 Harrison Street, Suite 1300
Oakland, CA  94612
(415) 882-5000