Filed 1/27/21  Estate of Walsh CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| Estate of PATRICIA N. WALSH, Deceased. | |
| | D076600 |
| DEBRA LUCAS et al., | |
| Plaintiffs and Appellants, | (Super. Ct. No. 37-2017-00016491-PR-PW-CTL) |
| v. | |
| DANA M. MOORE, as Co-executor, etc., | |
| Defendant and Respondent. | |
| LORA STARRY, | |
| Real Party in Interest and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Julia C. Kelety, Judge.  Affirmed.

Frisella Law; Lisa J. Frisella and John W. Melvin, for Plaintiffs and Appellants.

Law Offices of Johanna S. Schiavoni and Johanna S. Schiavoni for Defendant and Respondent.

No appearance by Real Party in Interest and Respondent.

Patricia Walsh and her husband John Walsh had six adult children: plaintiffs and appellants Debra Lucas and William Walsh (collectively, "plaintiffs"); defendant and respondent Dana Moore; real party in interest and respondent Lora Starry; Sean Walsh; and Timothy Walsh.[1] John passed away intestate in 2007.[2] The family's home burned down a few months later.

Patricia passed away in February 2016, leaving a will. Eight years before her death, Patricia transferred $600,000 to Dana. Plaintiffs sought a ruling that Patricia lent the money to Dana and that she was required to pay it back to the estate. Dana asserted the money was a gift. After an evidentiary hearing, the court found the monetary transfer was a gift to Dana. Plaintiffs challenge the judgment. Affirmed.

## PROCEDURAL BACKGROUND

A petition for probate was filed on May 8, 2017. Dana and Lora were appointed as co-executors. Dana petitioned to remove Lora as co-executor. Lora filed a cross-petition to remove Dana as co-executor. These cross-petitions were continued to trail the evidentiary hearing on other issues.

Debra and William filed a petition to characterize the $600,000 transfer from Patricia to Dana as a loan and to require Dana to repay the money to the estate. The petition contained five causes of action: (1) Petition for Order Determining Characterization of Intrafamily Monetary Transfer of $600,000

---

[1] We refer to the parties by their first names to avoid confusion, and mean no disrespect.

[2] John's estate is the subject of a separate proceeding.

2

as Estate Assets; (2) Petition for Order Directing Satisfaction of Debts Owed to [Patricia] from Beneficiary [Dana's] Distributive Share; (3) Resulting or Constructive Trust; (4) Double Damages Under Probate Code § 859; and (5) Civil Theft. Dana filed an opposition to the petition, claiming the transfer was a gift.

The court conducted a lengthy evidentiary hearing over several days. At the conclusion of the hearing, the record shows the court on May 10, 2019, met with the parties' attorneys who agreed to take off calendar all pending petitions, including the cross-petitions of Dana and Lora to remove each other as a co-executor. The new family house, which was the largest estate asset, already had been sold with the proceeds deposited in a locked account. The attorneys further agreed that other than some minor issues such as a final accounting and attorney fees, the estate proceedings could be resolved once the court resolved the overarching issue regarding the "characterization of the intrafamily monetary transfer" between Patricia and Dana.

As discussed *post*, the court by clear and convincing evidence found that the $600,000 transfer was a gift to Dana. The court therefore denied plaintiffs' petition in full.

Plaintiffs thereafter requested a Statement of Decision (SOD) (Cal. Rules of Ct.,[3] rule 3.1590(d) & Code Civ. Proc. § 632), raising the following questions: (1) Whether Dana bore the burden of proof to establish by clear and convincing evidence that the $600,000 transfer was a gift from Patricia; (2) Whether Dana proved sufficient facts to satisfy her burden as to each of the six separate factors to establish the $600,000 was a gift: (a) the competency of Patricia; (b) the intent of Patricia; (c) delivery; (d) acceptance;

_____

[3] All further references to rules are to the Rules of Court.

3

(e) divestment of all control by Patricia; and (f) the lack of consideration; (3) Whether a confidential relationship existed between Patricia and Dana, and if so, whether Dana showed that the transaction " 'was fair and free of undue influence or fraud' "; (4) Whether (under the second cause of action) the $600,000 should be deducted from Dana's share of the estate; (5) Whether (under the third cause of action) Dana held the $600,000 for the benefit of the estate; (6) Whether (under the fourth cause of action) Dana took property by undue influence, bad faith, or elder financial abuse (Prob. Code, § 859); and (7) Whether Dana fraudulently obtained property from the estate. (Pen. Code, § 4.)

The court filed its SOD on June 6, 2019. It included a description of the transaction and the evidence on which it relied about the nature of the transaction and Patricia's intent. The court confirmed its oral pronouncement at the May 10 hearing that Patricia gifted the $600,000 when she transferred it to Dana in 2008. The court in its SOD considered each of the six factors necessary for a gift and found each was proven by clear and convincing evidence. In so doing, the court noted there was conflicting evidence on the issue of whether the $600,000 transfer was a gift or a loan. The court nonetheless found Patricia's intent in 2008 at the time of transfer was to make a gift to Dana. The court denied the petition and awarded costs to Dana.

Dana filed objections to the SOD on June 21, 2019, and plaintiffs filed their own objections on June 27. The court overruled the objections and left the SOD unchanged. The court signed and filed a judgment on June 28, 2019, referencing its SOD. Plaintiffs filed objections to the judgment on July 15, 2019. Notice of entry of judgment was filed on July 16, 2019. Plaintiffs filed a notice of appeal on August 27, 2019.

4

"[Dana and her husband] each testified credibly about the many things they had done to help [Patricia], as well as [John, Dana's] father, including the payment of substantial sums for their benefit over the years. [Dana] was personally very close with her mother. They spent a good deal of time together, even living under the same roof at various times. [Patricia] was especially proud of [Dana] and very fond of [her husband]. This evidence was undisputed.

"After years of living without much money, [Patricia] acquired a substantial amount of cash upon the death of her husband, in the form of life insurance proceeds and the proceeds from an [*sic*] fire insurance policy.[5] Not long after she acquired the money, in 2008, while on an excursion to look at model homes in San Diego, [Patricia] told [Dana], in the presence of [Dana's husband], that she wanted to give them $600,000 so that they could buy a lot in the neighborhood, as a way to thank [Dana and her husband] for everything that [they] had done for her over the years. She said that no one else needed to know about it, and that she would 'take the matter to her grave.' There was no discussion of a loan, or of a promissory note, or of interest, or of repayment. Instead, shortly thereafter, [Patricia] transferred the money to [Dana], who used the money to purchase the lot.

"Although [Patricia] noted the sum and [Dana's] name on a yellow pad, she did not write 'loan' next to it as she had for other transactions with her children. In the many years after 2008, [Patricia] did not mention to anyone that she had made such a loan to [Dana], nor were there any other

---

[4]    As we discuss *post*, the court's findings are supported by substantial evidence summarized by the court in its SOD. This summary is thus taken from the SOD.

[5]    As noted, Patricia's house burned down in October 2007, a few months after her husband had passed away.

indications of a loan, such as any payment or request for repayment. The evidence establishes that Patricia usually was not reticent about sharing the details of her affairs with her other children, nor about reminding her children when they owed her money, nor about demanding the return of sums that she had loaned. However, she did not breathe a word about the transfer to Dana, apparently sticking with her statement that she would 'take it to her grave,' until a day many years later, in 2016.

"On a date in 2016, when she was peeved with Dana about a perceived slight, [Patricia] blurted out a statement to William . . . that referenced a loan of $600,000 to [Dana]. When questioned about it by her grandson[6] shortly thereafter, she became furious, stating firmly that it was her own business. When urged by another daughter [i.e., Lora] to clear the matter up, she instead did nothing.

"Thus, from 2008 until 2016, there was no evidence of any intent to make a loan. As to events and statements made in 2016 and thereafter, it may be that having inadvertently blurted out the amount of money that she transferred to Dana, Patricia lied to protect herself from the backlash to come from her other children. Or it may be that Dana was confused and forgetful about the details of the transfer. Or it may be that [Patricia] felt remorse about the gift (and the backlash to it) and re-characterized it in her own mind as a loan. But Patricia's motivation in 2016 did not and could not change the legal effect of her actions and intentions in 2008. At that time, the credible evidence established that Patricia intended the $600,000 transfer to be a gift. The court so finds, by clear and convincing evidence."

---

6     The record shows this conversation was with her son Sean, and not with a grandson.

DISCUSSION

A. *Guiding Principles*

"In reviewing a judgment based upon a statement of decision following a bench trial, we review questions of law de novo. [Citation.] We apply a substantial evidence standard of review to the trial court's findings of fact." (*Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981; *Schwan v. Permann* (2018) 28 Cal.App.5th 678, 693–694 (*Schwan*).) " 'Under the substantial evidence standard of review, "we must consider all of the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference, and resolving conflicts in support of the [findings]. [Citations.]" ' " (*Schwan*, at pp. 693–694.) Credibility of the witnesses is a matter for the trier of fact to decide. We accept the findings of credibility and do not reweigh the credibility of the witnesses. (*Do v. Regents of University of California* (2013) 216 Cal.App.4th 1474, 1492 (*Do*).)

" ' "It is not our task to weigh conflicts and disputes in the evidence; that is the province of the trier of fact. Our authority begins and ends with a determination as to whether, on the entire record, there is any substantial evidence, contradicted or uncontradicted, in support of the judgment. Even in cases where the evidence is undisputed or uncontradicted, if two or more different inferences can reasonably be drawn from the evidence this court is without power to substitute its own inferences or deductions for those of the trier of fact, which must resolve such conflicting inferences in the absence of a rule of law specifying the inference to be drawn." ' " (*Schwan*, *supra*, 28 Cal.App.5th at pp. 693–694.)

In connection with substantial evidence review, we note our high court in *Conservatorship of O.B.* (2020) 9 Cal.5th 989 (*O.B.*)) just recently clarified

7

the standard we must use in evaluating a sufficiency of the evidence claim when the clear and convincing standard of proof is applied by the trier of fact. It concluded: "[W]hen reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable factfinder could have found it highly probable that the fact was true. Consistent with well-established principles governing review for sufficiency of the evidence, in making this assessment the appellate court must view the record in the light most favorable to the prevailing party below and give due deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*Id.* at pp. 995–996.)

This case turns on the court's characterization of the transfer as a gift. A gift is a "transfer of personal property made voluntarily, and without consideration." (Civ. Code, § 1146.) The determination of whether a monetary transfer was a gift or a loan is a genuine issue of material fact that must be decided by the trier or fact. (*Burkle v. Burkle* (2006) 141 Cal.App.4th 1029, 1036 (*Burkle*).) "The question depends principally upon [the transferor's] intent at the time he [or she] advanced the funds . . . ." (*Ibid.*) We review the entire record for evidence "from which a reasonable factfinder could have found it highly probable" that the $600,000 transfer was a gift from Patricia to Dana. (See *O.B.*, *supra*, 9 Cal.5th at p. 996; *Schwan*, *supra*, 28 Cal.App.5th at pp. 693–694.)

B. *The Judgment Was Premature but Any Error Is Harmless*

Plaintiffs contend, accurately, that judgment was prematurely entered because the court signed and filed the judgment before the time for objections to the proposed judgment had expired.

8

Rule 3.1590(g) provides: "Any party may, within 15 days after the proposed statement of decision and judgment have been served, serve and file objections to the proposed statement of decision or judgment." Dana electronically served the proposed judgment on June 26, 2019. The court signed and filed the judgment on June 28, 2019, without waiting 15 days for objections to be filed. Errors in pleadings and procedure are reviewed for harmless error. (*F.P. v. Monier* (2017) 3 Cal.5th 1099, 1107–1108, 1116 (*F.P.*).) A matter may be reversed for errors in pleadings and procedures only if there was a miscarriage of justice. (*Ibid.*)

Plaintiffs argue they were prejudiced by the court's premature filing of the judgment because it failed to rule on their objections to the SOD and to "finalize" the statement. We disagree, as we conclude there was no error in the court's SOD, as we explain *post*. As such, the court's premature filing of the judgment amount to harmless error. (See *F.P.*, *supra*, 3 Cal.5th at p. 1116.)

C. *The SOD*

Plaintiffs also contend that the SOD was incomplete and thus not "finalized" because the court did not specifically respond to their objections. We presume that the court reviewed plaintiffs' objections and overruled those objections before signing the judgment. (See *In re Marriage of Winternitz* (2015) 235 Cal.App.4th 644, 653–654 [recognizing the general rule that as a court of review, " '[w]e must presume that the court knew and applied the correct statutory and case law' and applied them . . . to the facts in this case"].) Plaintiffs have not cited any authority for their claim that the court was required to respond to their objections before entering judgment.

"In rendering a statement of decision under Code of Civil Procedure section 632, a trial court is required only to state ultimate rather than

9

evidentiary facts; only when it fails to make findings on a material issue which would fairly disclose the trial court's determination would reversible error result. [Citations.] Even then, if the judgment is otherwise supported, the omission to make such findings is harmless error unless the evidence is sufficient to sustain a finding in the complaining party's favor which would have the effect of countervailing or destroying other findings. [Citation.] A failure to find on an immaterial issue is not error. [Citations.] The trial court need not discuss each question listed in a party's request; all that is required is an explanation of the factual and legal basis for the court's decision regarding the principal controverted issues at trial as are listed in the request. [Citation.]" (*Hellman v. La Cumbre Golf & Country Club* (1992) 6 Cal.App.4th 1224, 1230 (*Hellman*).)

The opportunity to object to a proposed statement of decision is not a chance to reargue the evidence or to tell the trial court where it went wrong. (*Heaps v. Heaps* (2004) 124 Cal.App.4th 286, 292–293.) Rather, the "main purpose of an objection to a proposed statement of decision is . . . to bring to the court's attention inconsistencies between the court's ruling and the document that is supposed to explain and embody that ruling." (*Id.* at p. 292.)

Errors in the statement of decision are reviewed for harmless error. (*F.P.*, *supra*, 3 Cal.5th at pp. 1107–1108.) Indeed, the complete failure to file a statement of decision after it is requested is subject to harmless error review. (*Id.* at p. 1102.) A matter will be reversed for an error in the statement of decision only if it resulted in a miscarriage of justice. (*Id.* at pp. 1107–1108.)

1.  Confidential Relationship

Plaintiffs contend that the court prejudicially erred because it failed in its SOD to answer plaintiffs' specific question whether a confidential relationship existed between Dana and Patricia at the time of the transfer. As noted, a " 'court is not required to respond point by point to the issues posed in a request for statement of decision. The court's statement of decision is sufficient if it fairly discloses the court's determination as to the ultimate facts and material issues in the case.' " (*Thompson, supra*, 6 Cal.App.5th at p. 983.)

Plaintiffs in their request for a statement of decision questioned whether Patricia and Dana were in a confidential relationship at the time of the transfer, such that Dana bore the burden of demonstrating that the transaction "was fair and free of undue influence or fraud." The court in its SOD responded to this question as follows: "There was no evidence of undue influence or fraud, and therefore the court does not reach the issue of whether the relationship between [Patricia] and [Dana] in 2008 rose to the level of a confidential relationship." Plaintiffs objected that the court "failed to make sufficient findings on these essential elements." As noted, the court entered judgment without changing its SOD.

A transfer of value between parties without consideration raises a presumption of undue influence or fraud when the relationship between the parties rises to a confidential level because such a relationship involves among other factors reliance and trust that distinguish it from an ordinary relationship. (*Solon v. Lichtenstein* (1972) 39 Cal.2d 75, 82; *In re Estate of Stephens* (2002) 28 Cal.4th 665, 677 (*Stephens*); *Sparks v. Mendoza* (1948) 83 Cal.App.2d 511, 514 (*Sparks*).) The relationship between a parent and child

11

is not inherently confidential. (*Stephens*, at p. 677; *Goldman v. Goldman* (1953) 116 Cal.App.2d 227, 237; *Sparks*, at p. 514.) However, " 'where the relationship between the parties is that of parent and child and the *parent relies on the child for advice* in business matters, a gift *inter vivos . . .* which is without consideration and where the parent does not have independent advice, is presumed to be fraudulent and to have been made under undue influence.' " (*Stephens*, at p. 677, italics added; see *Sparks*, at p. 512 [finding a confidential relationship existed between a daughter and her mother because the daughter "had assisted her mother in business transactions from the time she was a little girl [and] because the mother was ignorant of business affairs and of the English language"].)

Here, there is no substantial record evidence to support a finding that Dana and Patricia were in a confidential relationship, in contrast to a familial relationship, at the time of the transfer. For this reason alone we reject this claim of error. However, even assuming a confidential relationship existed, we conclude substantial evidence supports the finding it was rebutted, as found by the court.[7]

The presumption of undue influence or fraud that arises from a confidential relationship is rebuttable. "The burden of proof then shifts to the child 'to show that the transaction was free from fraud and undue influence, and in all particulars fair.' [Citation.] Put differently, this presumption may be rebutted by 'evidence that the act in question had its genesis in the mind of the parent and that he was not goaded to a completion by any act of such child.' [Citation.] The child's burden of proof is by a preponderance of the evidence." (*Stephens, supra,* 28 Cal.4th at p. 677.)

---

7    We do not imply that a confidential relationship existed. We simply make no decision one way or the other.

12

The court tacitly found that Dana rebutted the presumption in its SOD that "[t]here was no evidence of undue influence or fraud" when Patricia transferred the money to Dana. (See *Stephens*, *supra*, 28 Cal.4th at p. 677.) As noted, the court was not required to state evidentiary facts in support of its finding. (*Hellman*, *supra*, 6 Cal.App.4th at p. 1230.) Our review of the record shows there is ample evidence to support the court's finding that the transfer " 'had its genesis in the mind of the parent and that [Patricia] was not goaded to a completion by any act of such child.' " (*Stephens*, at p. 677.)

Dana and her husband both testified that while looking at a development for Patricia's new house, they saw an empty lot. Patricia said, "Your father would have loved to live here. He would love for that to happen to you." Patricia also said she wanted to thank them for all they had done for her. Dana and her husband were "overwhelmed" by Patricia's gesture, as Dana had never asked her mother for the money and she and her husband owned their own home and were not planning on moving. Patricia also never told Dana that the money was a loan and never asked for the money back. In short, the court found that Patricia was "rightfully grateful" to Dana and her husband for their help over the years, and made a spontaneous gift to them "in a moment of feeling flush and exuberant and grateful and excited." (See *Estate of Franco* (1975) 50 Cal.App.3d 374, 382 [spontaneous act of giving is inconsistent with undue influence].)

Based on the foregoing, we conclude that even if a confidential relationship existed between Dana and Patricia at the time of the transfer, there is sufficient evidence "from which a reasonable factfinder could have found it highly probable" there was no undue influence or fraud in connection with that transfer, thereby supporting the court's finding the presumption of

13

such was rebutted. (See *O.B.*, *supra*, 9 Cal.5th at p. 996; *Schwan*, *supra*, 28 Cal.App.5th at pp. 693–694.)

Plaintiffs rely on *Ortiz v. Avila* (1963) 222 Cal.App.2d 786 (*Ortiz*) to support their confidential relationship argument. *Ortiz* is inapposite because in that case, unlike here, the trial court failed to make a finding on the presumption of undue influence or fraud that arose from the confidential relationship. (*Id.* at pp 792–793.) We thus reject this claim of error.

2. Clear and Convincing Evidence Supports the Finding the $600,000 Transfer Was a Gift

Plaintiffs next contend that "uncontroverted facts compelled a finding of a loan" by Patricia to Dana. Plaintiffs repeat their contention that there was a presumption of fraud or undue influence because a confidential relationship existed between Dana and Patricia, a point we now have rejected. Plaintiffs emphasize the burden of proof by clear and convincing evidence, and suggest that we should review Dana's testimony with "heightened suspicion," which as noted *ante*, we have done. (See *O.B.*, *supra*, 9 Cal.5th at p. 996.)

The nature of the monetary transfer between Patricia and her daughter was an issue of fact that was decided by the trial court. (See *Burkle*, *supra*, 141 Cal.App.4th at p. 1036.) The court correctly examined Patricia's intent at the time she gave the money to Dana. (See *ibid.* [intent at time of transfer of funds].) The court was well aware that the standard of proof was by clear and convincing evidence and applied that standard, as we have noted.

Plaintiffs claim of error is in effect a request that we reweigh the evidence and the credibility of the witnesses, including Dana and her husband. This we cannot do. (*Schwan*, *supra*, 28 Cal.App.5th at pp. 693-694; *Do*, *supra*, 216 Cal.App.4th at p. 1492.) Factual decisions and credibility of

14

witnesses are determined by the trier of fact. (*Schwan*, at pp. 693–694; *Do*, at p. 1492.)

We have reviewed the record and found that substantial evidence supported the finding it was "highly probable" that the $600,000 transfer from Patricia to Dana was a gift. (See *O.B.*, *supra*, 9 Cal.5th at p. 996); and that any presumption of fraud or undue influence was rebutted by the evidence that Patricia came up with the idea of the gift on her own. Our authority ends with our determination that the evidence that supports the judgment was substantial. (*Schwan*, *supra*, 28 Cal.App.5th at pp. 693–694.)

E. *The Judgment Is Not Interlocutory*

Plaintiffs contend that the judgment from which they appealed is interlocutory and that there are claims against Dana that are yet to be resolved. The only factual claim in the petition filed by plaintiffs, however, was the characterization of the $600,000 transfer to Dana. Each of the five causes of action of the petition was based on the same factual characterization of the $600,000 transfer to Dana. The court by clear and convincing evidence found the money was a gift to Dana, and ruled in favor of Dana on each of those causes of action.

As noted, on the final day of the hearing, the parties told the court that after the decision on the $600,000 given to Dana, they could resolve any remaining issues. At that point, Patricia's primary house had been sold, with the proceeds in a separate account. The parties would wait and see whether any other creditors filed claims. Lora and Dana both took off calendar their petitions to remove each other as co-executors. The court acknowledged there could be other disputes that arose in the calculation of attorney fees and a final accounting, but based on the attorneys' representations, found these were relatively minor matters when compared to the disposition of the large

15

transfer to Dana of $600,000.  The court referred to these as "snags down the road."  Nothing else of substance remained to be decided.

Plaintiffs assert that their claims are intertwined with Lora's petition to remove Dana as co-executor.  Plaintiffs filed a joinder of Lora's petition to remove Dana, but not until August 15, 2019, nearly two months *after* the court judgment had been entered, and less than two weeks before plaintiffs filed their notice of appeal.  Lora had effectively dismissed her petition without prejudice before plaintiffs' purported joinder.

The judgment that we affirm is not interlocutory.

## DISPOSITION

The judgment is affirmed.  Costs to be awarded to Dana.

BENKE, J.

WE CONCUR:

McCONNELL, P. J.

O'ROURKE, J.

16