Filed 11/8/21 Cordova v. Wilson CA4/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MARK CORDOVA, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> DAVID WILSON, as Trustee, etc., <br><br> Defendant; <br><br> FRANCES DIAZ, <br><br> Objector and Appellant. | G059091 <br><br> (Super. Ct. No. 30-2018-00984697) <br><br> O P I N I O N |

Appeal from order of the Superior Court of Orange County, David L. Belz, Judge. Affirmed.

Mazur & Mazur and Janice R. Mazur for Objector and Appellant

Connor, Fletcher & Hedenkamp, Matthew J. Fletcher, Douglas A. Hedenkamp, Michael Sapira; NM Law and Noelle R. Minto for Plaintiff and Respondent.

Appellant Frances Diaz appeals from discovery sanctions entered against her by the trial court upon the recommendation of a discovery referee after she failed to appear for a scheduled deposition and to produce certain documents. Appellant contends the trial court adopted the discovery referee's recommendation without reviewing her objections. However, while the trial court's order does not expressly indicate the trial court reviewed appellant's objections, the material contained in the objections is substantively identical to the material contained in appellant's opposition to plaintiff Mark Cordova's discovery motion, which the trial court expressly stated it reviewed. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

Appellant is an attorney who was involved with estate planning issues relating to a dispute between the beneficiaries of the Cordova Trust. That dispute resulted in a lawsuit, in which plaintiff sought to depose appellant and compel production of documents. In February 2019, plaintiff served appellant with a subpoena requiring testimony and documents. By this time, a discovery referee had been appointed in the case. The referee set appellant's deposition for May 7, 2019. Appellant appeared, but only testified for a few hours, after which she said she was too ill to continue. The referee continued the deposition to May 28, 2019, and reminded appellant, who had produced no documents, of her obligation to comply with the document production portion of the subpoena. The referee also wrote to appellant to remind her of this obligation.

For the May 28, 2019 session of the deposition, plaintiff arranged for a limousine to drive appellant to and from her mother's home, to prevent the drive to the deposition from causing appellant anxiety and exacerbating her medical issues. On May 28, appellant brought her mother with her to the deposition and, after a few hours of testimony, again claimed she had to leave, this time to take her mother home. Appellant

2

again produced no documents. The referee ordered appellant to cooperate with the parties in setting a new date for her deposition, and to provide the documents requested in the subpoena, along with a privilege log.

Appellant neither worked with the parties to set a new deposition date nor produced documents. Instead, on June 10, 2019, appellant wrote to the parties and the referee, stating she had scheduled a doctor's appointment. On June 20, appellant forwarded to the referee a letter from her doctor, indicating she had "significant memory problem, slow response and some speech difficulty," and that she "is unable to perform trial work." The referee then ordered the parties to meet and confer with appellant to agree upon a date for her continued deposition. The referee also again wrote to appellant to remind her of her obligation to comply with the document production portion of the subpoena, and noted that nothing in her doctor's note suggested an inability to search for documents.

On July 23, 2019, appellant produced an additional doctor's note, from a different doctor. This doctor's note indicated appellant "has limited ability to recall recent events and becomes confused easily with episodes of slowing of thought and stuttering," and "should be restricted from trial duty and any trial related work or processing including depositions." The referee concluded that this note was insufficiently specific to bar further deposition testimony, or to prevent appellant from searching for and producing documents in response to the subpoena. The referee set August 20, 2019 as the "fallback date" for appellant's continued deposition, should the parties not be able to agree to a date, and ordered appellant to produce responsive documents and a privilege log by August 12, 2019.

In response to the order, appellant offered to have her doctor speak to the referee and to the parties to discuss the issue. After this suggestion was rebuffed, appellant produced a new medical report, indicating she was "incapable of handling any litigation, or document research for any depositions." The referee ordered the deposition

3

to go forward anyway, citing the vagueness of the doctor's notes, the lack of any apparent threat to appellant's health, and appellant's ongoing practice of law, which continued despite her medical condition. The referee also concluded the reference in the latest doctor's note to "document research for any depositions" was the result of manipulation by appellant. Appellant indicated she would not appear.

On August 19, 2019, the day before the continued deposition, appellant went to the emergency room, complaining of a severe headache. Appellant underwent various scans and the emergency room doctor issued appellant a note placing her "off work" through September 9, 2019. On the same day, appellant filed a motion for protective order in the superior court. In support of that motion, appellant submitted a note from another new doctor, recommending that she not undergo a deposition.

On August 20, 2019, appellant, as she had advised the parties and referee, failed to appear for her scheduled deposition. The referee and attorneys for the parties did appear, and the referee noted for the record that he "didn't believe" appellant's representations about her health at the time of her initial deposition session, but ordered that the deposition be continued out of "an abundance of caution."

The trial court denied appellant's motion for a protective order, directing the parties to submit their discovery disputes to the discovery referee. Appellant then sought to invoke Code of Civil Procedure section 170.6 to disqualify the discovery referee. This request was also denied as untimely.

Plaintiff moved for discovery sanctions against appellant. In addition to describing the events, plaintiff produced a declaration by a private investigator who had surveilled appellant on the days following her initial May 7 deposition session and surrounding her scheduled August 20 deposition session. The private investigator reported observing appellant engaging in normal everyday activities: driving around Los Angeles; walking her dog; visiting the bank and a café; carrying groceries, and moving her trash cans.

4

Plaintiff's motion for discovery sanctions sought $92,940 in sanctions against appellant, $10,000 of which plaintiff sought against appellant's counsel. Appellant opposed the motion, arguing she had not violated any court orders and had timely filed a motion for protective order before the August 20, 2019 deposition session. Appellant also argued plaintiff's sanctions motion included unrecoverable costs and failed to state a basis for sanctions against her attorneys.

While the sanctions motion was pending, appellant was deposed on two consecutive days, with the accommodation that only two hours of testimony were given on each day. Appellant also produced a large number of documents before these deposition sessions. The discovery referee noted that he did not perceive appellant to be suffering from any "medical or physical stress" at these subsequent deposition sessions.

After these depositions concluded, the discovery referee submitted a report and recommendations to the court concerning plaintiff's discovery motion. The referee recommended an award of discovery sanctions against appellant in the amount of $35,173, and separately recommended the court set an order to show cause regarding contempt. The referee's based these recommendations on a finding that appellant had "feigned or, if not, seriously exaggerated" her symptoms at her initial deposition session, and had thereafter engaged in "[g]amesmanship" and "intentional disobedience" of the referee's orders.

After the trial court received the referee's report, it ordered plaintiff to lodge the underlying motion and supporting documents with the court. Appellant also filed objections to the recommendations with the trial court. The trial court subsequently ruled on the recommendations, describing the procedural history of the dispute, and indicating it had reviewed the materials, reciting the list of documents plaintiff lodged in response to the court's order. The court adopted the referee's recommendation as to sanctions, awarding $35,173 to plaintiff and against appellant. The court declined to

sanction appellant's attorneys or to issue an order to show cause regarding contempt. Appellant timely appealed.

## DISCUSSION

Appellant argues the trial court abused its discretion by failing to consider appellant's objections to the discovery referee's report and recommendations, and because appellant was substantially justified in not appearing for the August 20, 2019 deposition session. We review orders imposing discovery sanctions for abuse of discretion. (*Cornerstone Realty Advisors, LLC v. Summit Healthcare REIT, Inc.* (2020) 56 Cal.App.5th 771, 789.)

*1. The Trial Court Considered All Arguments Raised in Appellant's Objections*

The trial court's ruling on the discovery sanctions against appellant listed the materials it had requested and reviewed. Appellant's objections to the discovery referee's report are not on that list, and the trial court's order does not refer to those objections. From this omission, appellant concludes the trial court failed to consider her objections, and argues the order must be reversed.

The trial court's ruling does create an ambiguity as to whether the trial court reviewed appellant's objections. However, even if the trial court did not review the document, substantially all of the relevant evidence and arguments contained in the objections were contained in appellant's opposition to plaintiff's motion for sanctions and the supporting evidence, which the trial court expressly stated it reviewed. The few items of evidence and argument that are not duplicative of appellant's opposition papers are insufficient to meet appellant's burden of demonstrating that "'it is reasonably probable that a result more favorable to [appellant] would have been reached in the absence of the error.'" (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800.) Absent prejudicial error, we must affirm. (*F.P. v. Monier* (2017) 3 Cal.5th 1099, 1107-1108.)

6

Appellant's objections contain three principal arguments, each with several sub-arguments. The first argument, that appellant did not engage in sanctionable conduct, is based entirely on evidence contained in the documents reviewed by the trial court, and is duplicative of arguments contained in appellant's opposition to the discovery motion. It contains extensive citations back to the opposition and raises no new facts or evidence.

The second argument, that the sanctions are excessive and unsupported by fact or law, is also entirely duplicative of arguments made by appellant in her opposition. Appellant's objections challenge line items for inefficiencies plaintiff's counsel suffered preparing for multiple depositions, plaintiff's travel costs, the cost of a private investigator, the cost of the discovery referee's appearance at the deposition, the cost of the videographer's appearance at the deposition, and costs arising from appellant's failure to produce documents as ordered. Appellant's opposition challenges these same line items, for precisely the same reasons.

The third argument, that the report contains certain "factual errors," addresses several different points, but all are either irrelevant or duplicative of issues discussed in the opposition. Appellant first disputes her submission to the jurisdiction of the discovery referee. This item is irrelevant because it is undisputed that the trial court had jurisdiction to issue an award of sanctions against appellant. Next, appellant raises two points relating to the underlying facts of the dispute. Again, these issues are not relevant to the discovery sanctions from which appellant appeals.

Appellant challenges the referee's statement that appellant "feigned or, if not, seriously exaggerated a panic attack wherein she was gasping for air and physically shaking" at her first deposition. Appellant's argument is based on the same evidence submitted with her opposition, and is duplicative of the statement of facts in her opposition. Appellant challenges the referee's statement that appellant "was 'compelled to leave' due to some unusual situation involving her mother that discovery referee then

7

did and now still does not understand," arguing she had been promised that the deposition would end by 4:00 p.m., and that the referee terminated the session due to plaintiff's counsel's aggressive questioning. Appellant made this same argument in her opposition.

Appellant challenges the referee's statement that appellant "did nothing to cooperate in setting a new deposition date." Appellant points to her doctor's visits. These doctor's visits are discussed at length in material submitted with appellant's opposition, and in any event, do not constitute cooperation in setting a deposition date. Appellant challenges the referee's statement that appellant "ostensibly checked herself into a hospital for observation, and subsequently caused three medical professionals to provide declarations to discovery referee." Appellant argues she went to the emergency room, rather than checking herself into the hospital and provided work status reports from healthcare professionals, not declarations. The factual distinctions proffered by appellant on this point are minimal; appellant fails to explain how they might be significant.

Finally, appellant challenges the referee's statement that appellant "manipulate[d] these medical professionals to say 'the right things' that would excuse her from having to re-appear." Appellant argues the referee lacked "foundation" to reach this conclusion—in other words, that the original evidence was insufficient to support this finding. That evidence is the same as that reviewed by the trial court. The only item of new evidence on this point is appellant's denial of this fact in her declaration, which was submitted along with the objections. This bare denial, unsupported by any corroborating evidence, does not by itself create a reasonable probability of a different result.

2. *The Trial Court Did Not Abuse Its Discretion*

Appellant also contends the trial court abused its discretion by failing to find substantial justification for appellant's failure to appear at her August 20, 2019 deposition. Appellant argues she filed a motion for protective order prior to that date and was therefore justified in failing to appear. However, a motion for protective order does not immunize the moving party from discovery sanctions. In fact, the opposite is true: if

8

a motion for protective order is made unsuccessfully, discovery sanctions against the moving party are *mandatory* absent substantial justification.  (Code Civ. Proc., § 2025.420, subd. (h).)

Appellant also argues she was concerned, based on the advice of her doctors, that her health would be adversely impacted by the deposition.  The discovery referee concluded this was not substantial justification, based upon the referee's observations of the appellant and the lack of any information in appellant's doctors' notes suggesting the possibility of specific future harm to appellant.  The trial court appears to have agreed, and substantial evidence supports this determination of fact.

As to her failure to produce documents, appellant argues the scope of attorney-client privilege as applied to those documents was uncertain because a writ petition on that issue was pending before this court at the time.  However, no stay or protective order had issued, either from the trial court or this court.  Appellant cites no authority for the proposition that a pending writ petition excuses a deponent's obligation to produce documents or immunizes the deponent from discovery sanctions.

Finally, appellant contends she was substantially justified in not appearing at the deposition because she was not subject to the jurisdiction of the discovery referee.  While it is true that the discovery referee's authority over nonparties is limited to reports and recommendations to the trial court, the sanctions order challenged by appellant was issued by the trial court.  Moreover, while appellant argues the discovery referee did not have authority to order her to appear, and that she therefore did not disobey a valid order, disobedience of a court order is not a prerequisite to monetary discovery sanctions.

## DISPOSITION

The order is affirmed.  Respondent shall recover his costs on this appeal.


ZELON, J.*

WE CONCUR:


MOORE, ACTING P. J.


GOETHALS, J.

*Retired Justice of the Court of Appeal, Fourth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.