Filed 7/7/23  Attia v. Helix RE CA6
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| ELI ATTIA et al., | H048803 |
| Plaintiffs and Appellants, | (Santa Clara County Super. Ct. No. 2014-1-CV-274103) |
| v. | |
| HELIX RE, INC., | |
| Defendant and Respondent. | |

Defendant Google LLC, through its outside counsel, made certain of its source code available to plaintiffs Eli Attia and Eli Attia Architect PC for review by plaintiffs' expert.  The computer Google's counsel provided for the purpose also had source code that had been produced to Google's counsel by defendant Helix RE, Inc. earlier in the litigation.[1]  At the time, pursuant to the parties' stipulated protective order, Helix had a pending objection to plaintiffs' expert reviewing its source code.  Under the protective order, plaintiffs could not permit their expert to review Helix's protected information until the trial court resolved the objection.  But plaintiffs' counsel allowed their expert to

---

[1] Helix was originally named Vannevar Technology and later, including in the earlier stages of the trial court proceedings and during relevant communications between the parties, Flux Factory, Inc.  For clarity, we refer to Helix by its current name and to source code generated under its prior names as Helix code.  Undesignated references to a party's counsel are to that party's outside counsel only.

review the Helix code that Google had inadvertently disclosed. Finding that counsel had knowingly violated the protective order without good cause or substantial justification, the trial court sanctioned plaintiffs and one of their attorneys a total of $16,215 for the violation. Plaintiffs and their sanctioned counsel appeal.

We find no abuse of discretion in the trial court's determination that, by the terms of the protective order, plaintiffs' counsel "should not have permitted [the expert] to proceed with his review without alerting opposing counsel" that Helix source code had been disclosed, and that plaintiffs' counsel lacked good cause and substantial justification for the violation. We therefore affirm.

## I.  BACKGROUND

Plaintiffs initiated this lawsuit in December 2014, asserting claims including misappropriation of trade secrets, and breach of contract.

As is pertinent here, plaintiffs alleged: Eli Attia, an architect, developed a technology called "Engineered Architecture." He agreed to share his trade secrets with Google to build "Project Genie," a software system implementing his technology, in return for reasonable compensation if the project succeeded. In June 2011, Google decided to spin-off Project Genie into a separate company and initially offered Attia a share of the new company to compensate him for his proprietary information. But by December 2011, Google effectively forced Attia off of the project. Also in 2011, Google and others formed a company called Vannevar Technology to pursue Project Genie. Vannevar was renamed Flux in 2014 and was later renamed Helix. In 2014, Helix began selling an automated software system for building design and construction called "Flux Metro Austin Preview," which plaintiffs maintain was based on Attia's trade secrets.

In May 2015, by stipulation of all the parties, the trial court entered a protective order governing the parties' treatment of confidential information produced in this litigation.

2

Helix first offered in a July 2017 e-mail to make its source code available for review in the litigation. In the e-mail, Helix designated its source code as "Confidential – Outside Counsel Only under section 1-C of the protective order" such that "only counsel of record and technical advisers (assuming any are cleared under section III of the P.O.) may conduct the initial inspection."

Google's counsel and its adviser began inspecting the Helix source code in September 2017. Helix was aware that Google's counsel and its adviser had retained some of the code following their inspection but was not aware of the full extent of the retention. Google itself was never given access to the code. Plaintiffs and their counsel were at the time unaware of the review or of the related retention of Helix source code.

In February 2018, Google first advised plaintiffs' that it would make available for inspection the Project Genie source code, which it also designated " 'Confidential – Outside Counsel Only' " under the protective order. Google noted that Helix had made its code available for inspection, stated its understanding that plaintiffs had not inspected Helix's code, and argued that if plaintiffs inspected both Helix's code and Google's Project Genie code, plaintiffs would see that Helix had written different code, independent of Project Genie.

By December 2019, Helix had prevailed on all of plaintiffs' claims, and plaintiffs' sole surviving cause of action was against only Google, for breach of contract.

In late December 2019, plaintiffs notified Google that they wished to review "the Google source code for the prototypes [Helix employee Nicholas Chim] discussed [during] his deposition, as well as any other software that was developed at Google during Project Genie and for Project Genie." Google agreed to make its code available but noted "that Google's code is not Flux's code, or vice versa. Google does not have custody or control of any Flux code."

At the same time, plaintiffs notified Helix that they would like to review "the [Helix] source code for the Austin Preview product and any other software that was

3

developed at Google during Project Genie and ended up at [Helix]." In January 2020, Helix responded by (1) stating that it did not possess any Project Genie code; and (2) disputing the relevance of any Helix code to plaintiffs' sole remaining contract claim against Google.

At the end of December 2019, pursuant to the protective order, plaintiffs notified defendants, including Helix, of their intention to disclose "Protected Information" to their outside technical adviser, Dr. Mani Golparvar Fard. Helix objected to Fard's access to its protected information on the ground that Fard served as an executive for a Helix competitor. Because the dispute could not be resolved informally, Helix filed a motion for a ruling on its objection on January 22, 2020, with a noticed hearing date of April 2, 2020. Google did not object to Fard's review of Google's protected information.

In February 2020, with Helix's motion pending, Fard and Nick Kliewer, an attorney and former electrical engineer representing plaintiffs, went to the offices of Google's outside counsel, Wilson, Sonsini, Goodrich & Rosati (Wilson Sonsini), to review Google's Project Genie code on a secured, non-networked computer that Wilson Sonsini provided for this purpose. Wilson Sonsini inadvertently included on the review computer not only Google's Project Genie source code but also the Helix code Wilson Sonsini had retained from the 2017 inspection. Prior to accessing the computer, Fard confirmed that "this computer contained all the Google code [he] was to inspect." Because all of the source code on the computer was password-protected, Fard and Kliewer requested and received assistance from Wilson Sonsini's IT manager in unlocking the folders, after which Fard asked the IT manager to confirm that the unlocked folders contained the Google source code. Fard and Kliewer proceeded to review the code using the computer.

Kliewer saw that there were references to Vannevar and Flux in the code and file paths. He would later declare that he inferred from this "that Vannevar/Flux had shared code with Google" because "at least [defendant] Michelle Kaufmann had worked for

4

Google after working for Vannevar/Flux and . . . files were being traded between the two companies." According to his declaration, he assumed the code was part of "some sort of earlier collaboration between Google and Vannevar/Flux" or "a continuing development at Google of some sort."

Kliewer directed Fard "to substantively compare each set of code to determine what and how much Attia technology was contained in each." Kliewer instructed Fard to "note which files . . . contained Attia technology and . . . request a printout of those files at the end of his review." At the conclusion of four days of review, Fard submitted to Google's outside counsel a handwritten list with file paths, requesting that these files be printed for him. Because the listed file paths had numerous references to Flux, Wilson Sonsini realized it had included Helix's source code on the review computer.

The next day, Wilson Sonsini notified Helix and plaintiffs that it had inadvertently disclosed Helix's source code to Kliewer and Fard. Wilson Sonsini added that it was "obvious to any user who decrypts the containers within the folder that the Flux code . . . came from Flux—the filenames for that source code are replete with the words 'Flux' and 'Vannevar.' . . . [¶] Despite the fact that they were obviously reviewing Flux code, and despite knowing that Dr. Fard is prohibited from reviewing Flux source code pending [Helix's] motion for protective order, in four days of source code review, neither Mr. Kliewer nor Dr. Fard notified anyone from [outside counsel] that the Flux code was inadvertently accessible, or even asked clarifying questions." Pursuant to the protective order, Wilson Sonsini asked plaintiffs to "sequester from Dr. Fard all materials regarding any Flux source code, including any notes derived from the Flux source code, until the Court can rule on [Helix]'s motion." In subsequent correspondence, plaintiffs stated that they "immediately . . . prohibited Dr. Fard from accessing any materials relating to any of the 'Flux' code" mentioned in the e-mail.

In March 2020, the trial court issued an order overruling in part Helix's objection to Fard's review of its protected material as it related to source code for three projects,

5

including the Austin Preview project. Plaintiffs then filed, among other things, a motion to compel Google to (re)produce Helix's source code to them. In May 2020, the trial court denied plaintiffs' motion because plaintiffs had not identified a basis for the court to compel Google to produce the requested material.

Helix thereafter moved for sanctions of $51,619 in connection with, among other things, plaintiffs' disclosure of Helix's code to Fard in connection with their review of what was supposed to be Google code and plaintiffs' subsequent motion to compel Google to produce Helix's code. The trial court granted the motion in part, ordering sanctions as follows: (1) $14,715 upon plaintiffs and Kliewer, jointly and severally, for violation of the protective order, payable to Helix; (2) $1,500 upon plaintiffs and Kliewer for violation of the protective order, payable to the court pursuant to Code of Civil Procedure section 177.5; and (3) $4,665 upon plaintiffs and another of their attorneys, Kenneth Kula, jointly and severally, for plaintiffs' unsuccessful motion to compel, payable to Helix. The trial court denied Helix's request for sanctions against Fard, on the theory that Fard had justifiably relied on Kliewer's direction.

Plaintiffs, Kliewer, and Kula timely appealed.

## II.    DISCUSSION

Appellants contend that the trial court abused its discretion in determining that plaintiffs and their counsel violated the protective order by allowing Fard to review Helix's code, which Google produced to them. Alternatively, appellants contend that the trial court erred in finding that the violation was without good cause or substantial justification.[2] The premise of appellants' argument is that Helix's code was not Helix's

---

[2] Appellants do not take issue with the amount of the sanctions award on appeal, as they dispute only whether an award of sanctions was proper in the first place. To the extent that appellants' unsupported assertion, made in both the introduction and the conclusion of its opening brief, that the sanctions were "disproportionate to the conduct at issue" could be understood as a challenge to the amount of the award, we disregard it. (See *People v. Stanley* (1995) 10 Cal.4th 764, 793 [" '[E]very brief should contain a legal argument with citation to authorities on the points made. If none is furnished on a

6

"Discovery Material," as defined by the protective order, because Helix did not produce it to Google pursuant to a formal discovery request. We reject the premise. Moreover, to the extent the trial court's order sets forth an erroneous interpretation of the protective order, we conclude that any error was harmless. Accordingly, we affirm.

## A.      *Standard of Review*

We review an order imposing sanctions for abuse of discretion. (*People v. Edwards* (2023) 88 Cal.App.5th 1259, 1267 (*Edwards*).) "The abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711-712, fns. omitted.) We are " 'highly deferential to the trial court's wide discretion in determining the facts, choosing from the array of available sanctions, and deciding the severity of the sanction chosen.' " (*Edwards*, *supra*, 88 Cal.App.5th at p. 1266.)

## B.      *Relevant Provisions of the Protective Order*

In section 1.A, the protective order defines "Discovery Material" and "Protected Information" as follows: "All documents, tangible things, physical objects, written discovery responses, testimony, or other information produced by the producing party in this litigation is considered 'Discovery Material.' Each of the identified categories of confidential Discovery Material shall be collectively identified in this Order as 'Protected Information.' This Order applies not only to Discovery Material produced in this litigation, but also to any information copied or extracted therefrom or otherwise reflecting Protected Information, in any form."

---

particular point, the court may treat it as waived, and pass it without further consideration.' "]; *Ewald v. Nationstar Mortgage, LLC* (2017) 13 Cal.App.5th 947, 949; *United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 146.)

The protective order provides two ways for a producing party to designate Discovery Material as Protected Information: (1) "[B]y marking it 'CONFIDENTIAL' or 'CONFIDENTIAL – OUTSIDE COUNSEL ONLY' prior to or at the time copies are furnished to the receiving party[;]" or, (2) with respect to "Protected Information not reduced to documentary, tangible, or physical form, or which cannot be conveniently designated as set forth in [(1)] or pursuant to another confidentiality designation . . . , by informing the receiving party of the designation in writing." Moreover, "[a]ny Discovery Material . . . made available for inspection by counsel for the receiving party prior to producing items selected by the receiving party shall be considered, as a whole, to constitute Protected Information (unless otherwise designated at the time of inspection)."

Pursuant to section I.B.1, "Protected Information designated CONFIDENTIAL shall mean all Discovery Material produced for or disclosed in connection with this action to a receiving party that constitutes confidential or commercially sensitive technical, sales, marketing, personal, or financial information of the producing party (including any party to this action and any non-party producing information or material voluntarily or pursuant to a subpoena or a court order in connection with this action), or information that the producing party is under a legal obligation or obligation to a non-party to maintain as confidential, whether embodied in documentary, tangible or physical form, or the factual knowledge of persons, and which has been so designated by the producing party."

As to source code in particular, section I.A.7 of the protective order provides, "In the event that source code is to be produced, the parties agree to meet and confer in good faith regarding the terms for production, subject to any designation made by the producing party of such source code." Moreover, "research and development" and "technical" information are among the categories of "extremely sensitive information" that may be designated "CONFIDENTIAL – OUTSIDE COUNSEL ONLY" under section I.C.1 of the protective order.

8

Section III of the protective order also addresses the parties' use of "outside technical advisers." That section requires prior written notice of an intent to disclose Protected Information to an outside technical advisor and sets forth a process for the resolution of objections to the intended disclosure. "No disclosure of Protected Information to an outside technical advisor . . . shall occur" before an "objection is resolved according to the procedures" in the protective order.

Section V of the protective order restricts the use of Protected Information and provides for sanctions. In particular, "Protected Information . . . shall not be disclosed to anyone who is not entitled to receive such Protected Information as" provided in the protective order. "If any party violates the limitations on the use of Protected Information as described in this section [V], the party violating this Order shall be subject to sanctions as ordered by the Court. In the event motion practice is required to enforce the terms of this Order, the prevailing party on such a motion shall be awarded reasonable costs, expenses, and fees, including attorney or other professional fees, incurred in connection with the discovery of the violation and the preparation, filing, and arguing of the motion or any other proceedings resulting from the violation."

C.    *Violation of the Protective Order*

Appellants do not dispute that if the Helix code on the computer Google's outside counsel provided was Helix's Protected Information, then they were prohibited from, and subject to sanctions for, sharing that information with Fard, their outside technical advisor, before Helix's objection was resolved. Instead, appellants claim that Kliewer could not have violated the protective order because the protective order as a matter of law did not encompass source code Helix—or any party—"voluntarily handed over" rather than "produced" in response to a formal discovery demand. In other words, appellants would have us conclude that, although the parties stipulated to a protective order for the express purpose of "expedit[ing] the production of Discovery Material" while "adequately protect[ing] information the parties are entitled to keep confidential,"

9

they nonetheless conditioned those bargained-for protections on the exchange of code-compliant formal discovery demands and responses.  We read the protective order otherwise.

To interpret a stipulated protective order, we apply the usual rules of contract interpretation.  (See *Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 632; *Los Angeles City School Dist. of Los Angeles County v. Landier Management Co.* (1960) 177 Cal.App.2d 744, 750-751.)  When no extrinsic evidence is admitted to aid in interpretation, or such extrinsic evidence is not in conflict, we independently construe the stipulation to give effect to the mutual intention of the parties.  (See *Iqbal v. Ziadeh* (2017) 10 Cal.App.5th 1, 8.)  "When the contract is clear and explicit, the parties' intent is determined solely by reference to the language of the agreement.  [Citations.]  The words are to be understood 'in their ordinary and popular sense' [citation]; and the 'whole of [the] contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other.' "  (*Gilkyson v. Disney Enterprises, Inc.* (2021) 66 Cal.App.5th 900, 916 (*Gilkyson*).)

Nothing in the protective order suggests that the parties intended to protect only information produced in response to formal discovery requests while leaving information produced through informal discovery unprotected.  Section I.B.1 of the protective order by its plain terms applies to material "produced for *or disclosed* in connection with this action" and "producing party" includes "any party . . . or nonparty producing information or material *voluntarily* or pursuant to a subpoena or a court order in connection with this action."  (Italics added.)  "Produced" is not specially defined within the stipulated order, and appellants agree that "produced" is "a quintessentially bedrock term that it is so generally well known and adhered to in litigation that [it is] rarely if ever defined in protective orders."  We understand the term "produced" in the " 'ordinary and popular sense' " (*Gilkyson*, *supra*, 66 Cal.App.5th at p. 916)—the term encompasses providing

10

source code for inspection by another party in litigation, much as it would "producing" or tendering a receipt for inspection or a credit card for payment in a non-litigation context.

Lacking any textual basis to predicate their definition of "produced" on a formal discovery demand, appellants alternatively claim that the trial court, in denying appellants' motion to compel Google to produce Helix's source code, "made clear . . . in the absence of 'formal discovery requests with regard to source code,' . . . the claim that a party can then subsequently complain about how the code is accessed or provided 'lacks merit.' " Appellants misconstrue the trial court's order. What the trial court unremarkably determined was that, absent a formal discovery request for the source code, there was no basis for a court to compel its production under the Civil Discovery Act. (See, e.g., Code Civ. Proc., §§ 2031.300, subds. (b) & (c) [conditioning motion "for an order compelling a response" on "a demand for inspection"] & 2031.030 [prescribing format and requirements for demand for inspection].) The limitations on a court's ability to compel a party to turn over information never formally demanded does not alter the plain language of the stipulated protective order or the clarity of the parties' mutual intention in resorting to language of ordinary meaning.

Appellants assert, in the alternative, that Helix failed to designate the material as Protected Information when producing it to Google. The record belies this assertion. When Helix first offered the code for inspection to counsel for plaintiffs and for Google alike, it designated the code as "Confidential – Outside Counsel Only" under the protective order.[3] Consistent with that designation and the protective order, Helix's code was produced to Wilson Sonsini only—not to Google itself—"to be placed on a secured

---

[3] Plaintiffs' counsel Erik Buether had been one of the recipients of the e-mail. At the hearing in the trial court, Buether asserted that he "believe[d]" Helix "handed over" Flux source code to Google "without any designation, without any . . . other agreement that restricted Google's use of the material." In their opening brief, appellants quote Buether's argument as though it were record evidence. (Cf. *People v. Stuart* (1959) 168 Cal.App.2d 57, 60-61 [arguments of counsel are not evidence].)

11

computer in a secured room without Internet access or network access." Indeed, Wilson Sonsini understood the protective order to require it to immediately notify the parties of the firm's inadvertent disclosure of Helix's source code to Fard, precisely because counsel understood that it was handling Helix's Protected Information. Nothing in the protective order required Helix to alter file names or modify code to designate source code as protected information. And despite plaintiffs' theory that Google might have acquired Helix code through business-dealing "collusion," the trial court expressly credited the declaration by Joshua Baskin of Wilson Sonsini, in which Baskin explained how Wilson Sonsini had acquired the Flux code from Helix in the course of pretrial discovery pursuant to the protective order and how Wilson Sonsini came to inadvertently include it on the review computer provided to Kliewer and Fard for inspection of Project Genie code.

We therefore discern no insufficiency of evidence or error of law in the trial court's determination that the Helix source code was Protected Information and that Kliewer violated the protective order by permitting Fard to review it while Helix's objection to Fard having access to its code was still pending.

## D.     *The Propriety of Sanctions for the Violation*

Addressing the propriety of sanctions for the violation of the protective order, the trial court framed the parties' dispute as "whether . . . Fard and . . . Kliewer knew the source code at issue was [Helix's] and whether their violation of the protective order was willful." The trial court stated that, although the protective order did not require a showing of willfulness, it "would hesitate to impose sanctions for a truly inadvertent violation." But the trial court was "not persuaded that plaintiffs' violation was unknowing or substantially justified here." Rather, it determined "they knew Google's production included Flux source code, and [Fard] was not entitled to review any Protected Information of Flux/Helix while Helix's objection to his review remained unresolved." Appellants argue that if Kliewer, the only attorney on site with Fard,

12

violated the protective order, he did so with good cause and substantial justification—namely his belief that Helix was not entitled to protection of the code, given his assumption that Helix provided it to Google outside of the litigation process.

As we explain below, the essence of the trial court's ruling was that: (1) plaintiffs failed to establish that Kliewer acted with good cause or substantial justification in allowing plaintiffs' expert to review source code that he knew originated from Helix, even as he knew Helix's objection to Fard's access to its source code was pending; but (2) Fard, a retained expert, acted with good cause and substantial justification because he relied on Kliewer, the attorney, to make a decision. We do not take the trial court's comments at the hearing or its written order as a finding that Kliewer knew at the time of the violation that the Helix source code would ultimately be adjudged Protected Information. Rather, the trial court imposed sanctions on Kliewer because he acted recklessly in ignoring "red flags" and assuming that the code had been produced outside of discovery without raising the issue with opposing counsel. Even if appellants had the right to examine code given to Google outside of discovery, Kliewer exhibited such recklessness. In imposing sanctions, the trial court acted within its discretion and on the basis of substantial evidence.

The trial court was not required to find that Kliewer knowingly violated the protective order to support a sanctions order. The protective order provides only that "any party who violates the limitations on the use of Protected Information . . . shall be subject to sanctions as ordered by the Court." Even in the event of inadvertent violations, "[c]ompliance with [mitigation measures] shall not prevent the producing party from seeking further relief from the Court."[4] "In a variety of similar contexts, the phrase

---

[4] Appellants make no argument that Code of Civil Procedure section 177.5 requires different analysis and take the position that the order for $1,500 payable to the court stands or falls in accordance with the greater sum awarded to Helix under the terms of the protective order alone.

13

'substantial justification' has been understood to mean that a justification is clearly reasonable because it is well grounded in both law and fact." (See *Doe v. United States Swimming, Inc.* (2011) 200 Cal.App.4th 1424, 1434.) "The burden of proving 'substantial justification' is on the . . . party claiming that it acted with substantial justification." (*Id.* at p. 1435.)

The core facts leading the trial court to conclude that the violation here was "knowing" and not "truly inadvertent" comprised the following: (1) Kliewer knew that Helix separated from Google in 2011 and did not become known as Flux—rather than Vannevar—until 2014;[5] (2) Kliewer knew from references to "Flux" in the file names and file paths in the code that "Google's production included Flux source code," as a result, any references to "Flux" in the code would likely post-date the 2011 separation; (3) Kliewer himself declared that he understood the code to have originated from Flux; (4) Google's repeated assertions that it was providing only Google code—and that it did not have custody or control of Flux code—indicated that the inclusion of Flux code on the review computer was inadvertent; and (5) "Flux/Helix had objected to the disclosure of its Protected Information to plaintiffs' expert." Thus, the court found, "Kliewer, at a minimum, knew at the time of the February inspection that at least some of the disputed files were code" Helix had shared with Google, "should not have permitted [Fard] to proceed with his review," and "should have erred on the side of caution and notified Flux/Helix of the information made available."

On this record, the trial court acted within its discretion in imposing sanctions because plaintiffs did not demonstrate that Kliewer acted with substantial justification

---

[5] In their opening brief, appellants state that Kliewer "was intimately familiar with all of the facts of the case, including [the] allegations that Google misappropriated [Attia's technology] and trade secrets while he was working on Project Genie at Google X, and then spun off Project Genie to be operated by a new company, Vannevar Technology—later known as Flux Factory, Inc."

14

when he violated the protective order. Drawing all presumptions and intendments in favor of the challenged order, we understand the trial court's determination that Kliewer "knowingly" violated the protective order as predicated on its finding that Kliewer knew the code was Helix source code, knew Helix's objection to Fard's review was pending, and knew that until the trial court's resolution of that objection he was not to permit Fard to review Helix source code. This is apparent not only from the trial court's framing of the factual dispute in its written order but also from the trial court's colloquy with plaintiffs' counsel at the hearing on the sanctions motion. At the hearing, the trial court responded to the same arguments appellants make here by observing, "[T]he one thing that was missing when you went through the facts is the fact that Helix objected back in December of 2019. . . . Whether that objection is valid or not, there is a protocol. And until the objection is resolved, and this is right from the protective order, things need to stop. In other words, the objection needs to be ruled on before any alleged protected information is disclosed to . . . Dr. Fard." By permitting Fard's inspection to go forward in reliance on an unverified assumption that Helix had not produced the code in the discovery process, Kliewer took an unjustified risk that resulted in a violation of the protective order's terms governing the parties' conduct while Helix's objection to Fard was pending.

In an effort to demonstrate that the trial court erred in finding a "knowing" violation, appellants dispute the trial court's comment that "[t]he manner in which Google obtained [Helix's] Protected Information is irrelevant to the issue of whether [Fard] was entitled to review this information." Appellants assert that this reflects an error of interpretation, on the theory that if Helix had provided its source code to Google in the course of the two entities' business dealings and not in litigation, Helix would not have been entitled to protection for it. On that line of reasoning, Kliewer could only have knowingly violated the protective order if he knew Helix had produced the inadvertently disclosed code to Google subject to the protective order.

15

But even if we were to endorse this limited aspect of appellants' interpretation of the protective order, appellants have not demonstrated that any error in the trial court's statement was material to its determination that sanctions were warranted for the violation, let alone a miscarriage of justice warranting reversal. (See *Cassim v. Allstate Ins. Co.*(2004) 33 Cal.4th 789, 800; *F.P. v. Monier* (2017) 3 Cal.5th 1099, 1107-1108.) The trial court did not base its order on a determination that Helix's objection was meritorious or that Helix would have been entitled to foreclose Fard's access: the court acknowledged that it had ultimately overruled Helix's objection to plaintiffs' disclosure to Fard of the specific source code Wilson Sonsini inadvertently disclosed. Rather, what was demonstrably troublesome to the trial court was Kliewer's disregard for the *provisional* protection to which Helix's code was entitled pending a ruling on its objection, by acting on his assumptions about the provenance of Helix's source code at a time when Helix's objection was still to be resolved. We find no fault with the trial court's reasoning.

Appellants do not contend that the trial court was required to find a "knowing" violation to impose sanctions. Rather, appellants contend that the trial court would have exercised its discretion differently if it had—in their view, properly—determined that Kliewer's violation was not "knowing." To that end, appellants contend that if the trial court erred in construing the protective order to cover Helix's source code even if Google obtained it through commercial transfers rather than discovery, that error was prejudicial because (1) the trial court did not make sufficient factual findings addressing Kliewer's knowledge of how Google obtained Helix's code; and (2) the only distinction between Kliewer, who was sanctioned, and Fard, who was not, is that Kliewer committed a knowing violation of the protective order and Fard did not.

We disagree with appellants' construction of the sanctions order. The trial court imposed sanctions on Kliewer because, as plaintiffs' counsel, he directed plaintiffs' expert to review Helix code knowing that if the code had been produced by Helix, he

could not allow his expert to review it under the protective order. Fard, in contrast, relied on Kliewer to instruct him. Given the trial court's well-supported express determination that "plaintiffs fail to establish good cause or substantial justification for [Kliewer's] violation," the trial court's exercise of its authority to impose sanctions was permissible and its decision to exercise its authority as it did turned not on Kliewer's actual knowledge that Helix produced its source code to Google in discovery, but on Kliewer's reckless decision to proceed in the face of red flags without first consulting opposing counsel.[6]

**E.    *Sanctions for Abuse of the Discovery Process***

Finally, we reject appellants' challenge—raised for the first time in their reply brief—to the $4,665 in sanctions for their unsuccessful motion to compel Google to produce again the Helix code. Whether or not a discrete sanctions award of less than $5,000 is appealable, appellants have articulated no persuasive reason for us to overlook their silence on the issue in their opening brief. (See *Julian v. Hartford Underwriters Ins. Co.* (2005) 35 Cal.4th 747, 761, fn. 4; *People v. Mickel* (2016) 2 Cal.5th 181, 197.) On the merits, as well, appellants concede that their belated appellate contention is contingent upon a conclusion that the Helix source code it sought from Google was not Helix's Protected Information, a conclusion we have rejected above.

---

[6] Where it is the party charged with the burden of proof on a disputed issue who challenges the trial court's adverse determination on that point, "the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' [Citation.]" (*In re. I.W.* (2009) 180 Cal.App.4th 1517, 1528, disapproved on another ground in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010, fn. 7.) Moreover, "[e]ven though contrary findings *could* have been made," we "defer to the factual determinations made by the trial court when the evidence is in conflict." (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 479.)

### III.    DISPOSITION

The sanctions order is affirmed.  Respondent is awarded its costs on appeal.

_____
LIE, ACTING P.J.

WE CONCUR:


_____
WILSON, J.


_____
BROMBERG, J.


*Attia et al. v. Helix RE, Inc.*
H048803