Filed 11/9/23  Guardianship of L.S. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| Guardianship of the Person of L.S., a Minor. | |
| J.B., Petitioner and Respondent, v. J.S., et al., Objectors and Appellants. | F084935 (Super. Ct. No. BPB-20-002611) **OPINION** |

APPEAL from an order of the Superior Court of Kern County.  Andrew Kendall, Commissioner.

J.S. and D.B., in pro. per., for Objectors and Appellants.

No appearance for Petitioner and Respondent.

-ooOoo-

In this guardianship proceeding, minor's step-grandmother petitioned to be appointed guardian of minor's person.  Over minor's parents' objection, the probate court entered an order appointing petitioner as minor's guardian, and letters of guardianship issued.  Minor's parents jointly appeal from the order appointing guardian.  We affirm.

## FACTS

We draw the facts below from only the clerk's transcript because mother and father chose to proceed without a record of the oral proceedings.

Minor is a boy who was 13 years old when the guardianship was established. On July 21, 2020, minor's step-grandmother ("petitioner") petitioned to be appointed guardian of his person. Petitioner stated in the petition that minor had lived with her and her husband—who had recently passed away—since his infancy. She and her husband were the only parents minor had ever had in his life. His parents ("mother" and "father") abandoned him when he was an infant "and never had interest to care [for] or raise him." His parents "have a long history of drug [*sic*] and in and out of jail." Petitioner wanted to become minor's guardian so she could get medical insurance for him. She "love[s] him with every cell in [her] body" and has his "best interest and growth in life in mind."

The petition asked the court to excuse petitioner from having to give notice of the hearing on the petition to several people, including mother and father. She explained she could not locate mother and father and tried calling and texting both of them but received no response. She stated their "whereabouts [were] unknown."

On August 5, 2020, the court entered an order prescribing notice, directing petitioner to personally serve mother and father with the petition at least 15 days before the hearing set on September 14, 2020. But on the same day, the court entered another order finding that mother and father could not with reasonable diligence be given notice of the hearing on the petition. On January 21, 2021, the court entered orders allowing for service by publication on mother and father of notice of hearings on the petition.

On February 16, 2021, father filed an objection to the petition. He stated the petition is "predicated on a mountain of salacious lies." He said he has never used drugs or been in trouble for drugs. He loves his son "more than life itself" and has always looked out for his best interest. He said minor lived in his (father's) home from when he was born through two years of preschool. Father "agree[d]" to let minor stay

2.

"temporar[ily]" with petitioner and her husband when he suffered a work-related injury and his wife (minor's mother) was diagnosed with epilepsy. He said he realizes now it was a mistake to let minor stay with petitioner and claimed petitioner is keeping minor "estranged" from him, mother, and minor's three sisters. He stated he did not know petitioner's "true motivation for doing this" but suspected she had financial incentives.

Mother filed her objection to the petition the same day as father. She stated father and she have no history of drug use and have not been "in and out of jail." She denied abandoning her son and said she has tried talking to him, but her phone number was blocked from his phone. She said she missed minor "every day and only want[s] the very best for him."

Petitioner petitioned to be appointed temporary guardian of minor's person on March 9, 2021. The court issued an order appointing petitioner as temporary guardian on May 5, 2021, after a hearing at which mother and father were present. As stated in the order, the court found that minor was in a stable environment and that it would be detrimental to remove him from petitioner's home. The court also found a temporary guardianship was in minor's best interest and was necessary and convenient. The order allowed mother, father, and minor's siblings to have "reasonable unmonitored telephonic contact" with minor.

The hearing on the original petition for appointment of a guardian was held on July 5, 2022. On July 19, 2022, the court entered an order appointing petitioner as guardian of minor's person. The order stated mother and father's objections were overruled. The order also said the court "had read and reviewed the petition and considered the evidence before it, including the exhibits on file." The court found appointing a guardian was in minor's best interest and was necessary and convenient. Letters of guardianship issued the next day.

On September 12, 2022, mother and father filed a notice of appeal from the order appointing guardian. They attached a copy of the order and letters of guardianship to the notice.

## DISCUSSION

An order granting letters of guardianship is final and appealable. (Code Civ. Proc., § 904.1, subd. (a)(10); Prob. Code,[1] § 1301, subd. (a).)

## I.     Inadequate notice of hearing

Mother and father first complain they did not receive the required 15 days' notice of the initial hearing in these proceedings. They have not shown reversible error.

Section 1511 provides that "at least 15 days before the hearing on the petition for the appointment of a guardian, notice of the time and place of the hearing shall be given[.]" (§ 1511, subd. (a).) Notice must be served on the minor, any person having legal custody of the minor, the parents of the minor, and any person nominated as a guardian for the proposed ward. (§ 1511, subd. (b)(1)–(4).) Notice must also be sent to the spouse named in the petition, the minor's relatives who are named in the petition, and the person having the care of the minor if other than the minor's legal custodian. (§ 1511, subd. (c).) Notice need not be given to any of the above individuals if the court determines that the person cannot with reasonable diligence be given notice or if giving notice would be contrary to the interest of justice. (§ 1511, subd. (g).) Proof of notice or excusal of notice must be made before the court can appoint a guardian. (§ 1511, subd. (h).)

Mother and father contend they did not receive the required 15 days' notice of the initial hearing. According to the superior court's register of actions, the first hearing happened on February 23, 2021. This was seven days after mother and father filed their objections to the petition on February 16, 2021. We observe that mother and father's

---

[1] Undesignated statutory references are to the Probate Code.

objections correctly note the date, time, and location of the February 23, 2021, hearing. Most importantly, we observe that a proof of publication of notice of the February 23, 2021, hearing was filed February 19, 2021. The proof of publication shows the notice was published on January 27, 2021, and February 3, 10, and 17 of 2021.

We do not understand how mother and father can claim they did not receive proper notice of any hearing. Therefore, they fail to meet their burden of showing reversible error. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609 [order appealed from is presumed correct and it is appellant's burden to show reversible error].)

## II. Advisement of right to counsel

Mother and father next complain that the court erred by failing to advise them of their right to have counsel appointed to represent them if they could not afford legal representation. They cite California Rules of Court, rule 5.534(d)(2)(B), which provides that, in cases involving Welfare and Institutions Code section 601 and 602 petitions, the court may appoint counsel for a parent or guardian who desires but cannot afford counsel. But this guardianship case is a proceeding under the Probate Code, not the Welfare and Institutions Code.[2] Mother and father have identified no law that entitles them to counsel in these proceedings.

## III. Sufficiency of the evidence

Mother and father next contend there was insufficient evidence to support a finding of "parental unfitness." Their argument implies a guardianship cannot be established without such a finding; however, that is not the case.

Under section 1514, a court may appoint a probate guardian if "it appears necessary or convenient" (§ 1514, subd. (a)), but the same section expressly provides that

---

[2] Welfare and Institutions Code section 601 states that children from 12- to 17-years old who are habitually truant or beyond their parents' control can be declared wards of the juvenile court, and section 602 defines the jurisdiction of the juvenile court in delinquency cases.

in making such an appointment the trial court is governed by Family Code section 3020 et seq., and section 3040 et seq., which are family law provisions relating to child custody and best interest of the child. (§ 1514, subd. (b)); see *Guardianship of A.L.* (2014) 228 Cal.App.4th 257, 267.)[3]

Family Code section 3020, subdivision (a), declares that "the health, safety, and welfare of children shall be the court's primary concern in determining the best interests of children when making any orders regarding the physical or legal custody or visitation of children." (Fam. Code, § 3020, subd. (a).) Under Family Code section 3040, subdivision (a), parents are first in the order of preference for a grant of custody, and a trial court is allowed "the widest discretion to choose a parenting plan that is in the best interest of the child[.]" (Fam. Code, § 3040, subd. (e).) Before granting custody to a nonparent over parental objection, the court must find that granting custody to a parent would be detrimental to the child, and that granting custody to the nonparent is required to serve the best interest of the child. (*Guardianship of Ann S.* (2009) 45 Cal.4th 1110, 1123; Fam. Code, § 3041, subds. (a), (b).) The finding of detriment must be supported by clear and convincing evidence. (Fam. Code, § 3041, subd. (b).) But Family Code section 3041, subdivision (c), states: "A finding of detriment does not require a finding of unfitness of the parents." Mother and father's argument therefore fails.

### *Detriment to minor and best interest findings*

Mother and father do not explicitly challenge the court's finding that placing minor with mother and father would be detrimental to minor or the finding that placing

---

[3] Section 1514, subdivision (b)(1), states: "In appointing a guardian of the person, the court is governed by Chapter 1 (commencing with Section 3020) and Chapter 2 (commencing with Section 3040) of Part 2 of Division 8 of the Family Code, relating to custody of a minor."

minor with petitioner was required to serve minor's best interest.**4** But were they to contend insufficient evidence supported those findings, we would disagree.

We apply the deferential abuse of discretion standard to custody orders made under section 3041. (*Montenegro v. Diaz* (2001) 26 Cal.4th 249, 255.) The factual findings underpinning such orders, however, are reviewed for substantial evidence. *(Guardianship of L.V.* (2006) 136 Cal.App.4th 481, 487.) When employing the substantial evidence standard, we do not consider conflicts in the evidence. We are concerned whether there is substantial evidence in favor of the respondent, and if substantial evidence is present, no matter how slight it may appear in comparison with the contradictory evidence, the challenged finding must be upheld. (*City of San Buenaventura v. United Water Conservation District* (2022) 79 Cal.App.5th 110, 119–120.)

As we noted earlier, mother and father chose to proceed in this appeal without a transcript of the reported testimony. However, the clerk's transcript by itself contains substantial evidence to support the finding that the guardianship was in minor's best interest. In the order appointing guardian, the court stated that it "ha[d] read and

---

**4** The order appointing guardian expressly found that appointing petitioner as minor's guardian was in minor's best interest, but the order did not mention whether placing minor with mother and father would be detrimental to minor. All the same, we must presume the probate court made that finding of detriment. This is because " ' "[a] judgment or order of the lower court is presumed correct. All intendments and presumptions are indulged to support it on matters as to which the record is silent…." ' " [Citation.] A proper record includes a reporter's transcript or a settled statement of any hearing leading to the order being challenged on appeal." (*Elena S. v. Kroutik* (2016) 247 Cal.App.4th 570, 574.) If an appellant proceeds without a reporter's transcript and no error affirmatively shows in the clerk's transcript, we must presume "any condition of facts consistent with the validity of the judgment [or order.]" (*Id.* at pp. 574–575.) "We presume that official duties have been regularly performed[,]" including those of trial judges." (*Id.* at p. 575.) It is entirely possible the court made the required detriment finding orally at the hearing on the petition; in any event, we must presume the court did make such a finding.

reviewed the petition and considered the evidence before it, including the exhibits on file." The clerk's transcript contains two investigative reports prepared under Probate Code section 1513, subdivision (a), which were filed in the probate court. The petition and these two reports contain substantial evidence to support a best interest finding.

The following facts are from the two investigative reports. These facts accord with the petition's allegations. Minor had not seen his parents in over six years as of March 2021. He did not remember what his mother and father looked like and said he "does not know them." He could not remember when they last visited him. He reported "some stress" about not being able to live with petitioner anymore, whom he called his "grandma." He loved his grandmother and would not want to live with anyone else, but "would not mind" if his mother and father wanted to visit him. Minor was an 'A' student and well-spoken with an advanced vocabulary for his age. He reported having perfect attendance at school for seven years. He kept his bedroom and bathroom clean and earned an allowance by taking out the trash and emptying the dishwasher. One investigator noted that minor "was smiling and spontaneous during his interview, indicating how successful his grandmother is in raising [him]."

Petitioner had been a schoolteacher for 23 years and had a master's degree. Petitioner told one investigator that mother and father "had a long history of drug abuse and episodes of incarceration" and left minor with petitioner and her husband when he was an infant because they were incapable of caring for him. Petitioner wanted to add minor to her health insurance through her employer but needed a guardianship to do so. She considered minor her grandson. She did not want to "cause any issues" with minor's family, but she believed it was in minor's best interest if he kept living with her because he had lived with her for most of his life. Petitioner also said she was willing to work with mother and father to have them visit minor. The investigators reported petitioner's home was neat and clean and suitable for minor.

The evidence in the petition and investigative reports shows that minor is happy and thriving in petitioner's home and wants to stay there. Particularly striking is that minor reported he did not know his parents and did not even know what they looked like. He also reported stress about maybe not being able to live with petitioner anymore. This constitutes substantial evidence that placing minor with mother and father would be detrimental to minor and that placing minor with petitioner was required to serve his best interest.

## IV. Failure to serve notice of final order

Finally, mother and father contend their due process rights were violated by petitioner's attorney's failure to serve them with the "final orders" as directed by the probate court. We interpret "final orders" to mean the order appointing guardian and the letters of guardianship. Mother and father contend this failure of service has "preclud[ed] them from pursuing any further legal recourse with respect to the unjust ruling rendered by the lower court."

The order appointing guardian directed petitioner's attorney to serve the order and letters to mother and father and "then file notice of entry of order showing that service has been made." Mother and father contend they were not served with the order or letters, yet their notice of appeal has copies of both the order and letters attached. So even if they were not served with these documents by petitioner's attorney, obviously they still received them, and they have not even tried to explain how the alleged lack of service prejudiced them. Moreover, as they have been able to pursue this appeal, they have not been "precluded … from pursuing any further legal recourse." We reject their claim for failing to show prejudice from any alleged lack of service. (*F.P. v. Monier* (2017) 3 Cal.5th 1099, 1107–1108 [appellate courts reverse or modify judgment or order only for prejudicial error].)

## DISPOSITION

The trial court's July 19, 2022, order appointing guardian is affirmed. Each party will bear its own costs, if any were incurred.

SNAUFFER, J.

WE CONCUR:

POOCHIGIAN, Acting P. J.

DETJEN, J.

10.