Filed 11/10/25  Marriage of Karzai CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re the Marriage of NAJWA TARZI and MATEEN KARZAI. | |
| NAJWA TARZI KARZAI,<br><br>    Respondent,<br><br>        v.<br><br>MATEEN KARZAI,<br><br>    Appellant. | G064143<br><br>(Super. Ct. No. 21D003500)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Israel Claustro, Judge. Affirmed.

Wilkinson & Finkbeiner and Brian D. Mullen for Appellant.

The Blonska Firm, Jason A. Blonska and Robin E. LeMaster-Farrimond for Respondent.

\*          \*          \*

Mateen Karzai appeals from a judgment in this marital dissolution action involving his former spouse Najwa Tarzi Karzai.[1] He raises three arguments on appeal. First, he contends the court erred by denying his request for order to modify a domestic violence restraining order (DVRO) issued against him (the RFO). According to Mateen, the court should have issued a statement of decision, prematurely entered judgment, lacked jurisdiction to maintain his adult daughter as a protected party, and misapplied Family Code section 3044.[2] Second, he argues the court improperly considered an exhibit that was not admitted into evidence. Third, he challenges the denial of his request for need-based attorney fees.

For the reasons below, we find no reversible error and affirm the judgment.

## FACTS

Mateen and Najwa were married for 22 years, and they have one daughter and one son. In 2021, Najwa filed a petition for dissolution of marriage.

## I.

### THE DVRO

On October 10, 2022, the court issued a three-year DVRO against Mateen, protecting Najwa and their two children. Among other things, Mateen was ordered to not contact the children and to stay 100 yards away from them and their schools. When the DVRO was issued, the parties'

---

[1] As is customary where the parties share a surname, we refer to them by their first names for ease of reading and clarity.

[2] All further statutory references are to the Family Code unless otherwise stated.

daughter was 17 years old, a first-year college student, and would turn 18 years old the following month.

In granting the DVRO, the court found Najwa credibly described an incident when Mateen struck her, which also was corroborated by Mateen's own testimony. The court likewise found Najwa credibly described Mateen's threats and name-calling as well as an incident where Mateen placed his hands on their son in anger. The court further noted an incident where the son "had to restrain [Mateen] from the daughter in some way, again indicating acts of domestic violence." The court added that Mateen lacked candor and minimized his conduct.

## II.

### MATEEN'S RFO TO MODIFY THE DVRO

In August 2023, Mateen filed an RFO seeking to modify the DVRO to remove the children as protected parties.[3] He was represented by counsel solely in connection with the RFO.

At the outset of the hearing in March 2024, Mateen's counsel argued the court should decide whether it even had jurisdiction to maintain adult children as protected parties. At that time, the daughter was an adult, and the son was 17 years old. In response, the court disagreed that the children's attainment of majority altered their status as protected parties. But as to the son, the court suggested the parties present evidence regarding whether Mateen had rebutted the section 3044 presumption. The court explained: "Just for purposes of the appellate review, I think it would be

---

[3] On the court's own motion, we augment the order to include the August 3, 2023 RFO filed in the Orange County Superior Court, case No. 21D003500.

3

prudent to take some testimony . . . . We can't take testimony on legal issue[s] because we don't have authority for it. [¶] But in terms of [section] 3044 and your client's activities consistent with overcoming [the] presumption. I think it's relevant . . . . Because in my mind, that's the only avenue that we have available. At least as it relates to [the son] . . . ."

At the end of the hearing, Mateen's counsel argued Mateen had learned from the various programs he completed. He also emphasized the children were either adults or nearing adulthood and no longer required protection.

The court ultimately denied Mateen's RFO. It acknowledged Mateen's completion of a 52-week batterer intervention program, anger management, and parenting courses, but it found no meaningful indication that these efforts led to behavioral change. The court emphasized Mateen's lack of "contrition" or acknowledgment of wrongdoing and concluded he had not demonstrated sufficient progress to justify modifying the DVRO.

After the court orally announced its ruling, Mateen's counsel requested a statement of decision addressing: (1) "whether the [DVRO] with children as protected persons survives the children [reaching] the age of majority"; (2) "whether adult children in this case should be able to control the extent to which they have contact with" Mateen; (3) whether Mateen "was an active parent in his children's lives"; (4) whether "[Mateen], as an active parent in his children's lives should be forever prohibit[ed] from ever contacting his children again"; and (5) "whether the court's conclusion that [Mateen] did not acknowledge on the witness stand . . . that he could have done better. That he may have overreacted, that he is more peaceful now. Does not in fact [demonstrate] that there was some merit to successful

4

completion of those courses." The court ordered Mateen's counsel to prepare a proposed statement, which he never did.

## III.

### TRIAL

In March 2024, the case proceeded to trial. Mateen appeared in propria persona. During trial, the court and parties considered Najwa's Exhibit 110, a proposed marital balance sheet that was never admitted into evidence. The court also denied Mateen's request for need-based attorney fees under section 2030. Mateen timely filed a notice of appeal from the judgment.

## DISCUSSION

### I.

### NAJWA'S MOTION TO DISMISS THE APPEAL

Before we consider the merits, we address Najwa's motion to dismiss the appeal based on the disentitlement doctrine. She asserts Mateen has failed to pay ongoing child support, refused to cooperate with Najwa to refinance the family home, and failed to pay his share of attorney fees for preparation of qualified domestic relations orders. She also notes the trial court previously sanctioned Mateen for failing to participate in good faith settlement discussions, among other things. She argues Mateen's noncompliance demonstrates an "attitude of contempt" sufficient to warrant dismissal of the appeal.

We decline to exercise our discretion to dismiss the appeal. "'An appellate court has the inherent power, under the "disentitlement doctrine," to dismiss an appeal by a party that refuses to comply with a lower court order.'" (*In re Marriage of Cohen* (2023) 89 Cal.App.5th 574, 580.) The doctrine is not jurisdictional. (*Ibid.*) Instead, it is a "'"discretionary tool that may be applied when the balance of the equitable concerns make it a proper

5

sanction.""" (*Ibid.*) Although Mateen's post-judgment conduct, if established, is troubling, it does not persuade us that dismissal of his appeal is warranted. The equities of this case favor resolving the appeal on the merits. We accordingly deny Najwa's motion to dismiss and her related request for judicial notice as unnecessary to resolve this appeal.

II.

MATEEN'S RFO TO MODIFY THE DVRO

Mateen contends the court erred by denying his request to modify the DVRO because it did not issue a statement of decision, prematurely entered judgment, lacked jurisdiction to maintain the daughter as a protected party, and misapplied section 3044. Mateen's arguments do not warrant reversal.

A. *Statement of Decision*

1. Applicable Law

Under Code of Civil Procedure section 632, "[t]he court shall issue a statement of decision . . . upon the request of any party appearing at the trial." A party's request must "specify those controverted issues as to which the party is requesting a statement of decision." (Code Civ. Proc., § 632.) If, as here, the trial "is concluded within one calendar day or in less than eight hours over more than one day," a request for statement of decision "must be made prior to the submission of the matter for decision." (*Ibid.*) A trial court's failure to issue a requested statement of decision is reviewed for harmless error. (*F.P. v. Monier* (2017) 3 Cal.5th 1099, 1108; *Alafi v. Cohen* (2024) 106 Cal.App.5th 46, 61.)

2. Analysis

Mateen requests we reverse the court's denial of his RFO and remand for a statement of decision, which his counsel requested at the

6

hearing. In response, Najwa argues Mateen's request was untimely because the matter had already been submitted. (Code Civ. Proc., § 632; Cal. Rules of Court, rule 3.1590(n).) Although the court orally submitted the matter and announced its ruling, Mateen's counsel requested a statement of decision immediately after the court's oral ruling. The court apparently accepted the request because it ordered Mateen's counsel to prepare a proposed statement of decision. (See Cal. Rules of Court, rule 3.1590 (c)(3) [trial court may order a party to prepare a statement of decision].) Regardless of the timeliness of his request, Mateen's counsel never submitted a proposed statement of decision for the court's consideration. (See *Whittington v. McKinney* (1991) 234 Cal.App.3d 123, 129 ["A party may waive his or her right to a written statement of decision"].)

Assuming the court erred by not issuing a statement of decision after Mateen's failure to prepare one, the error was harmless. Such an error is reversible only if it resulted in a miscarriage of justice—i.e., if it is reasonably probable the outcome would have been more favorable to Mateen absent the error. (*F.P. v. Monier, supra*, 3 Cal.5th at pp. 1108–1109; *Doe WHBE 3 v. Uber Technologies, Inc.* (2024) 102 Cal.App.5th 1135, 1164–1165; *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800.) Mateen contends he was prejudiced by the absence of a statement of decision because the court did not explain the legal basis for continuing to include his adult daughter as a protected person or for applying section 3044 when he only sought contact, not custody. But the record reveals the court made express findings supporting its denial of the RFO. It found Mateen had not meaningfully acknowledged any wrongdoing, lacked insight into his past behavior, and showed no genuine contrition. Although Mateen completed a 52-week batterer intervention program, a parenting class, and an anger management

7

course, the court found these classes did not result in any corrective behavior or demonstrate that Mateen understood the impact of his past conduct.

The court's reasoning also encompassed the issues Mateen claims were unaddressed, including whether continued protection was warranted given the children's age. Indeed, the court specifically noted the son was almost 18 years old and indicated it would consider a future request for contact subject to the son's preferences. Earlier in the hearing, the court noted the daughter's age of majority did not divest it of authority to keep her as a protected person. It explained: "Often times we include protected parties on those restraining orders that are either not relatives or sometimes older relatives. Family members, grandparents, parents and there's nothing to [a]ffect the validity of that restraining order . . . . [¶] [or that] changes the status of a protected person. The analogy . . . in this case would be when the child was listed a protected person. And the restraining order in this case, they happen to be under the age of 18 . . . . [¶] Even after they became the age of majority, I don't think the age of majority changed their status as a protected party." In other words, the court's comments demonstrate it evaluated the relevant circumstances, including the children's age.

On this record, Mateen has not shown prejudice resulting from the absence of a written statement of decision, and the court's oral findings provide a sufficient basis for appellate review.

## B. Time to Object to the Proposed Judgment

Assuming the court deemed the statement of decision to have been waived, Mateen alternatively argues the court erred by entering judgment before expiration of the 10 day period to object under California Rules of Court, rule 3.1590(j). The latter rule provides that a party has 10 days after service of a proposed judgment to file objections. (Cal. Rules of

Court, rule 3.1590(j).) Here, the judgment of dissolution was filed on April 3, 2024, five days after the court's trial findings. Despite the court's haste, Mateen does not identify any objection he would have raised to the proposed judgment or explain how the outcome would have changed. Any error was therefore harmless.

## C. *Jurisdiction Over Daughter*

Mateen next argues the court erred by denying his RFO as it pertained to his daughter because the court lacked jurisdiction over her after she turned 18 years old. Although a court's jurisdiction to issue custody and visitation orders terminates when a child attains majority (§§ 2010, 3022), this limitation does not apply to restraining orders issued under the Domestic Violence Prevention Act (§ 6200 et seq.) (DVPA).

The DVPA provides an independent statutory basis for protecting victims of domestic violence regardless of age. (See § 6221, subd. (a).) Section 6320, subdivision (a) authorizes courts to issue ex parte orders protecting "other named family or household members[,]" and Judicial Council form DV-130 includes a section for "Additional Protected Persons," which is defined as "family or household members" of the protected party. Here, Mateen's daughter was 17 years old when the court issued the DVRO and found she was a victim of Mateen's domestic violence. She ceased to be subject to custody or visitation orders when she turned 18 years old, but she remained eligible for protection under the DVPA as an adult family member. (*See In re Marriage of Reichenthal* (2021) 73 Cal.App.5th 396, 405.)

Mateen's reliance on *In re Marriage of Jensen* (2003) 114 Cal.App.4th 587 (*Jensen*) is misplaced. In *Jensen*, the court held a visitation order regarding an adult child was void because the trial court lacked statutory authority to make the order once the child became an adult. (*Id.* at

9

pp. 592–594.) After the child, who was autistic, turned 18 years old, the father sought to enforce ongoing visitation pursuant to a marital settlement agreement. (*Id.* at p. 591.) The court concluded the trial court lacked jurisdiction to compel visitation by an adult child or to require the mother to control the child's conduct. (*Id.* at pp. 592–594.) *Jensen* did not involve a restraining order under the DVPA, and it did not address a court's authority to protect adult family members from domestic violence.

For these reasons, the court had jurisdiction over Mateen's daughter. To hold otherwise would produce an anomalous result: an emancipated adult child who is a victim of domestic violence would receive less protection than any other adult household member. Such a result would be contrary to the purpose of the DVPA, which is to safeguard all victims of domestic violence.

## D.  Section 3044

Mateen further claims the court erred by applying section 3044 because he did not seek custody or visitation orders. The court denied the RFO on broader grounds so its reliance on section 3044 does not establish reversible error.

Section 3044 creates "a rebuttable presumption that an award of sole or joint physical or legal custody of a child to a person who has perpetrated domestic violence is detrimental to the best interest of the child." (§ 3044, subd. (a).) Here, Mateen did not seek custody but rather modification of the DVRO to remove the children as protected parties and to allow contact with them.

Although the trial court found section 3044 "would still apply" to Mateen's then-minor son, it ultimately denied the RFO because Mateen had not demonstrated responsibility for the events that had transpired. The

10

court's ruling was supported by the evidence. Indeed, Mateen maintained the trial court had erred by issuing the DVRO and testified he did nothing wrong to the children. He also attributed the DVRO to mistakes made by his former attorney rather than his own conduct, denied attacking Najwa, and testified his daughter had attacked him.

Under these circumstances, we need not resolve whether section 3044 governed Mateen's RFO. Even assuming, arguendo, the court improperly invoked section 3044, the court's ruling essentially rested on Mateen's lack of responsibility for his actions. The court did not abuse its discretion by relying on this ground. (§ 6320, subd. (a) [only "good cause" is needed to include family or household members as protected parties]; *Loeffler v. Medina* (2009) 174 Cal.App.4th 1495, 1502–1508 [trial court did not abuse discretion by denying termination of DVRO where moving party failed to show a material change in circumstances, a change in law, or that the ends of justice required termination]; *see K.T. v. E.S.* (2025) 109 Cal.App.5th 1114, 1129–1132 [trial court erred by denying inclusion of children as protected parties where evidence of exposure to domestic violence satisfied the "good cause" standard].)

### III.

### EXHIBIT 110

Mateen also contends the court erred by considering Exhibit 110, a proposed marital balance sheet prepared by Najwa's counsel that detailed the parties' assets and liabilities. He claims he was not prepared to address Exhibit 110 at trial because he received it after the court's exhibit-exchange deadline and the figures differed from Najwa's stipulated schedule of assets and debts. The court did not abuse its discretion by considering Exhibit 110.

11

The court did not admit Exhibit 110 into evidence. Instead, the document was used as a trial aid: it referenced admitted exhibits supporting the values listed, was discussed on the record, and was adjusted based on the parties' testimony and the admitted evidence. The court also reviewed the document with Mateen and allowed him to confirm or dispute any line item. Finally, it does not appear Mateen objected to the court's use of Exhibit 110. Although he appeared in propria persona, self-represented litigants are held to the same procedural rules as represented parties. (*Nuno v. California State University, Bakersfield* (2020) 47 Cal.App.5th 799, 811.) For these reasons, the court acted within its discretion. There is no basis to disturb its ruling.

IV.

ATTORNEY FEES

Mateen finally argues the court erred by denying his request for need-based attorney fees under section 2030. He emphasizes the disparity in the parties' incomes: Najwa earned over $17,000 per month while Mateen received about $600 in rental income and lived off $37,000 in savings. He also appears to suggest the court did not make express findings required under section 2030 and improperly relied on Najwa's "discretionary" expenses to conclude she could not pay attorney fees. Although the court did not explicitly address the parties' disparity in access to funds, it is not reasonably probable the court's explicit finding would have altered the outcome.

Section 2030 requires the court to make findings on: (1) "whether an award of attorney's fees and costs . . . is appropriate"; (2) "whether there is a disparity in access to funds to retain counsel"; and (3) "whether one party is able to pay for legal representation of both parties." (§ 2030, subd. (a)(2).) The court must make explicit findings on each of these three issues. (*In re Marriage of Morton* (2018) 27 Cal.App.5th 1025, 1050–1051.) Failure to do so

12

is reversible error if the appealing party establishes prejudice—i.e., "'a reasonable probability that in the absence of the error, a result more favorable to the appealing party would have been reached.'" (*Id.* at pp. 1050.) Section 2032 further provides that any award must be "just and reasonable under the relative circumstances of the respective parties." (§ 2032, subd. (a).) We review the trial court's ruling for abuse of discretion. (*In re Marriage of M.A. & M.A.* (2015) 234 Cal.App.4th 894, 903.)

Here, the court did not separately address the parties' disparity of access to funds. But it found Najwa did not have the ability to pay Mateen's attorney fees because her expenses exceeded her income. The court noted her $60,000 in credit card debt, $47,000 vehicle loan, and sole responsibility for the children's tuition and living expenses. According to her income and expense declaration, she had almost $20,000 in monthly expenses. Mateen insists the court relied on expenses that were discretionary and should have been disregarded. But a party's ability to pay necessarily includes the nature and extent of their expenses. Mateen also cites no authority suggesting the court was precluded from considering Najwa's debts and family obligations.

In short, it is not reasonably probable the court would have ordered Najwa to pay attorney fees had it made an explicit finding on the disparity issue. Any omission was therefore harmless.

DISPOSITION

The judgment is affirmed. Najwa shall recover her costs incurred on appeal.


SANCHEZ, J.

WE CONCUR:


MOTOIKE, ACTING P. J.


MOORE, J.